250 So.2d 375

**STATE of Louisiana**

**v.**

**Ethel C. BRADFORD.**

**No. 51033.**

June 28, 1971.

John P. Jordan and James D. Sparks, Jr., Monroe, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Robert W. Kostelka, Dist. Atty., for plaintiff-appellee.

HAMLIN, Justice.

Defendant Ethel C. Bradford appeals from her conviction of the crime of manslaughter, LSA–R.S. 14:31, and her sentence to serve ten years in the Louisiana State Penitentiary. Presented for our consideration are five bills of exceptions reserved during the course of the proceedings.

The Department of Welfare assigned foster children to the home of defendant. Among those assigned were the four Vonner children, Pamelia Marie, Michael Ray, Christopher, and Johnny Lee Alto; at the time of the commission of the instant offense, Pamelia and Michael were not living with defendant, having been transferred to homes of other parties. During the early afternoon of January 14, 1970, defendant and Johnny, five years of age, were at home alone, and the child was pronounced dead at approximately 6:22 P.M.

Counsel for defendant states in brief, "The testimony of the Ouachita Parish Coroner, Dr. J. W. Cummins, revealed that the child died from sub dural and extra dural hemotomas, and in addition there were abrasions and bruises throughout the child's body." (The testimony of the coroner is not attached to the bills of exceptions submitted for our consideration.) An indictment charging that defendant unlawfully killed Johnny Lee Alto Vonner was filed against her on January 22, 1970; she was tried by jury and found guilty by a verdict of nine to three.

BILLS OF EXCEPTIONS NOS.
1, 2 and 3

Bill of Exceptions No. 1 was reserved when the trial judge overruled defense counsel's objection to the testimony of Mrs. Faye Kelly as to events which took place on January 15, 1970.

Bill of Exceptions No. 2 was reserved when the trial judge overruled defense

counsel's objection to the testimony of Dr. Elaine Fichter, Pediatrician, with respect to her examination of Christopher Vonner on January 15, 1970.

Bill of Exceptions No. 3 was reserved when the trial judge overruled defense counsel's objection to the testimony of Pamelia Marie Vonner with respect to corporal punishment she had received from the defendant.

Mrs. Faye Kelly, a case worker for the Department of Welfare, State of Louisiana, testified that on January 15, 1970, she accompanied Christopher Vonner and Mrs. Melba Sandifer, a case worker for the Department of Welfare, to Dr. Fichter's office for the purpose of having Christopher physically examined. Mrs. Kelly stated:

"Mrs. Melba Sandifer went to the home to pick Christopher up after she had heard of the death of Johnny. She —we were concerned about the other child in the home. She undressed the child, pulled his shirt off and found bruises on both shoulders."

When asked what she observed or saw at the doctor's office, Mrs. Kelly testified, "When we got to the doctor's office, of course, the child was undressed for a complete physical and on both shoulders there were bruises about the shoulders which looked—they were raised looking places and we could not tell from looking if they were done recently or if they were old bruises." She stated that extensive X-rays were made.

Dr. Fichter testified that Christopher, a small six year old child, " * * * had a small bruise, tender swelling behind the left ear. He had an old abrasion, a healed injury along the right posterior rib cage. He had a fresh welt like swelling and inflammation across his left shoulder and left scapula and he also had a tender groiny injuration along the posterior aspect of the right arm." When questioned about X-rays, the doctor said:

"Yes. I brought just the positive films if you would like to see them. There was a fracture—an old fracture—of the rib cage along—underneath the obvious bruise on the outside and the area of the right arm that was swollen and injurated and tender was off of the site of an old injury. No definite fracture line was seen in the arm but it probably was an old fracture that had occurred or an old injury, possibly just hematoma, that is hemorrhage, that had occurred some months before."

Dr. Fichter said that the child had had no apparent treatment and that, "He would have been put in a cast if he had been treated and he obviously was not put in a cast, not the rib, of course, but the arm."

Defense counsel contends in this Court:

" * * * the testimony forming the

basis for Bills Nos. 1 and 2 should have been excluded as being beyond the intended and statutory scope of R.S. 15:-445 and R.S. 15:446. There was no testimony adduced to show Appellant had inflicted these contusions, etc., to CHRISTOPHER VONNER, and the condition of CHRISTOPHER VONNER, on January 15, 1970, without proof ETHEL C. BRADFORD caused same, is beyond the scope of Sections 445 and 446 as it cannot be categorized as a '* * * similar act * * *' under Section 445, nor an '* * * act, conduct * * *' under Section 446, if the evidence does not tie and relate CHRISTOPHER VONNER'S condition on January 15, 1970, to Appellant's action. There is no direct evidence to this effect; therefore, such evidence is irrelevant and immaterial under R.S. 15:441 and additionally, prejudicial and should have been excluded.

"* * *

"In the instant case, there is no testimony solicited from FAYE KELLY and DR. ELAINE FICHTER, their testimony being the basis of Bills No. 1 and 2, to the effect that they had personally observed the Appellant, ETHEL C. BRADFORD, strike the child, JOHNNY LEE ALTO VONNER, nor testimony to the effect that they had observed the Appellant, ETHEL C. BRADFORD, strike the child, CHRISTOPHER VONNER, or that they could testify that because of a blow inflicted by Appellant, the child, CHRISTOPHER VONNER, had the bruises, contusions and fractures of the arm and rib. Their testimony is limited solely to independent set of facts; FAYE KELLY can testify only that she observed an examination conducted by DR. FICHTER, at which time she saw contusions and bruises and old scar tissues on the body of CHRISTOPHER VONNER; DR. FICHTER testifies that she found contusions and bruises and a fracture of the arm and rib, although indicating in her testimony that these were eight (8) weeks old. Neither witness can relate the condition of CHRISTOPHER VONNER to the acts of Defendant and Appellant, ETHEL C. BRADFORD, and therefore it is submitted that such testimony would not fall within the intended scope of R.S. 15:445 and R.S. 15:446 for the reason that the issue before the Jury was whether ETHEL C. BRADFORD, in a fit of passion and anger, beat the child, JOHNNY LEE ALTO VONNER, to death, and the testimony of these witnesses in no way has a direct bearing upon this issue for the reason that there is no correlation of the result, the condition of CHRISTOPHER VONNER, and the acts of Appellant, ETHEL C. BRADFORD, nor is there any correlation as to the time, place and circumstances."

Pamelia Vonner testified that she had lived with the defendant for about a year and nine months and had requested to be transferred away from defendant's home because she was being beaten. When asked by whom she was beaten, she said, "By Mrs. Ethel Bradford."

In this Court, defense counsel submits:

"With reference to the testimony of PAMELA MARIE VONNER, it is likewise respectfully submitted that such testimony is inadmissible under these statutes for the reason that there is no correlation or inference to be drawn between the act of disciplining this child, and the intentional beating to death of the child, JOHNNY LEE ALTO VONNER, unless it can be shown that the Appellant, ETHEL C. BRADFORD, habitually and continuously, with force and violence and in an uncontrolled manner, disciplined the decedent. It is submitted that a proper reading of the record would reflect that no such evidence was adduced. Therefore, taken out of context, the evidence submittedly by PAMELA MARIE VONNER shows only that she had been disciplined by ETHEL C. BRADFORD, on more than one occasion, normally admitting that she deserved the discipline. Such acts of discipline of a third party has no direct relationship to the charge of manslaughter of JOHNNY LEE ALTO VONNER."

Defense counsel argues:

"The theory set forth by the STATE was that Appellant had disciplined these foster children in the past, that on January 14, 1970, the date the child died, Appellant and the child were in the home alone, that the other children did not arrive from school until approximately 3:30 P.M., and that the child, sometime in the afternoon of January 14, 1970, was forcibly struck by Appellant and beaten to death. Appellant's act in hitting/touching the child could not be shown; therefore, the STATE relied upon these statutes to not only infer intent, but to infer the actual act of Appellant in striking the child."

Defense counsel further argues:

"With reference to two of the witnesses, FAYE KELLY and DR. ELAINE FICHTER, Bills Nos. 1 and 2, there is no correlation between the result found as to CHRISTOPHER VONNER, and the acts of ETHEL C. BRADFORD in causing such result. With reference to Bill No. 3, there is no correlation or relationship between the criminal charge—manslaughter—and the disciplining of the foster child, PAMELA MARIE VONNER."

■ Defendant stood in a position of being "in loco parentis" to the victim. "The term 'in loco parentis' means in the place

of a parent, and a 'person in loco parentis' may be defined as one who has assumed the status and obligations of a parent without a formal adoption." 67 C.J.S. Parent and Child § 71, p. 803. "A parent may inflict reasonable and moderate chastisement on his child for the punishment of faults or disobedience and the enforcement of parental authority." 67 C.J.S. Parent and Child § 7, p. 630. Defendant was charged with the manslaughter of Johnny Lee Alto Vonner, a child she could reasonably and moderately chastise for faults or disobedience and to whom she owed certain duties and responsibilities.

"Manslaughter is:

"(1) A homicide which would be murder under subdivision (1) of Article 30 (murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or

"(2) A homicide committed, without any intent to cause death or great bodily harm.

"(a) When the offender is engaged in the perpetration or attempted per-

petration of any felony not enumerated in Article 30, or of any intentional misdemeanor directly affecting the person; or

"* * * *" LSA–R.S. 14:31.

In order to convict in a manslaughter prosecution, the burden is upon the State to prove that the homicide was willful and felonious; evidence offered for this purpose is admissible even though it might indicate that defendant was actuated by malice. The jurisprudence to this effect is settled. State v. Walker, 204 La. 523, 15 So.2d 874, 876 (1943). Cf. State v. Garner, 241 La. 275, 128 So.2d 655.

"* * * Since the law imposes on the parent a duty to rear and discipline his child and confers the right to prescribe a course of reasonable conduct for its development, the parent has a wide discretion in the performance of his parental functions, but that discretion does not include the right wilfully to inflict personal injuries beyond the limits of reasonable parental discipline. No sound public policy would be subserved by extending it beyond those limits. * * *" Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218, 224 (1955). Cf. State v. Lutz, Ohio Com.Pl., 113 N.E.2d 757; Gibson v. Gibson, 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648.

The testimony, supra, was offered to prove that defendant employed a severe system of chastisement for the foster chil-

dren entrusted to her care. The system of child beating was offered to show that defendant exceeded ordinary parental authority and rights. The testimony was not offered to prove guilt or innocence, but to prove a system of wrong doing.

In State v. Hamilton, 249 La. 392, 187 So.2d 417, 421 (1966), a manslaughter prosecution, this Court stated:

"When intent forms an essential part of the inquiry, testimony may be offered of such acts or conduct of the accused as tend to establish such intent. R.S. 15:446. Evidence of intent need not be proven as a fact, but may be inferred from the circumstances of the transaction. R.S. 15:445. This evidence of intent was particularly pertinent in view of the fact that one of the defenses here was accidental killing. * * *"

■ When the testimony supra was adduced, defense counsel had the right of cross-examination; the case was tried to a jury, and the jury had the right to believe or disbelieve the testimony. We conclude that the procedure resorted to by the State was permissible under our statutory law and jurisprudence. State v. Lawrence, 251 La. 1085, 208 So.2d 685. We find that the testimony, supra, was admissible in evidence under LSA–R.S. 15:445 and 15:446 [1] for the limited purposes, as stated supra, of showing system and intent. See, State v. Skinner, 251 La. 300, 204 So.2d 370; State v. Brown, 185 La. 1023, 171 So. 433; State v. Childers, 196 La. 554, 199 So. 640; State v. Crook, 253 La. 961, 221 So.2d 473; State v. Bolden, 257 La. 60, 241 So.2d 490.

The trial judge neither committed reversible error nor abused his discretion in admitting in evidence the testimony, supra; he followed the settled jurisprudence of this State.

Bills of Exceptions Nos. 1, 2 and 3 are without merit.

## BILL OF EXCEPTIONS NO. 4

■ Bill of Exceptions No. 4 was reserved at the end of the State's presentation when the trial court overruled defense counsel's motion for a directed verdict.

In State v. Hudson, 253 La. 992, 221 So.2d 484 (1969), this Court held that in cases tried to a jury Article 778, LSA–C. Cr.P., insofar as it provided for a directed

1. "In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction." LSA–R.S. 15:445.

"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." LSA–R.S. 15:446.

verdict, was repugnant to the constitutional provision that, "The jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge." Art. XIX, Sec. 9, La.Const. of 1921. This holding was affirmed in State of Louisiana v. Williams, No. 258 La. 801, 248 So.2d 295, decision handed down May 4, 1971, and the matter was set at rest. See, State of Louisiana v. Millsap, 258 La. 883, 248 So.2d 324 decision handed down May 4, 1971.

Defendant herein was tried by a jury and was therefore not entitled to a directed verdict.

Bill of Exceptions No. 4 is without merit.

## BILL OF EXCEPTIONS NO. 5

Bill of Exceptions No. 5 was reserved when the trial judge overruled defense counsel's Motion for a New Trial.

The Motion for a New Trial alleges, in part, errors assigned to the rulings of the trial judge which have been determined in the Bills of Exceptions discussed supra; they are without merit and require no further attention.

The Motion for a New Trial also alleges the following:

"(a) Pursuant to LSA–C.Cr.P. Article 855,[2] Mover shows that notwithstanding reasonable diligence by defense counsel, and Defendant, the error/defect complained of and below noted and specifically itemized, was not discovered either before, or during the trial, and that said error is as follows, to-wit:

"(b) That the theory of the prosecution's case was that JOHNNY LEE ALTO VONNER was beaten to death by the Defendant, ETHEL C. BRADFORD, and that he was beaten to death by said Defendant with some heavy object, thought to be a stick, or heavy switch; that on January 15, 1970, Deputy

2. "The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

"The court, on motion of the defendant, shall grant a new trial whenever:

"* * *

"(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or

"* * *" LSA–C.Cr.P. Art. 851.

"A motion for a new trial based on ground (4) of Article 851 shall contain allegations of fact sworn to by the defendant or his counsel, showing:

"(1) The specific nature of the error or defect complained of; and

"(2) That, notwithstanding the exercise of reasonable diligence by the defense, the error or defect was not discovered before or during the trial." LSA–C.Cr.P. Art. 855.

WILLIAM CAUSEY, accompanied by a second deputy, traveled to the home of the Defendant, located at * * * and seized, without a search wrrant, a stick approximately three to four feet long and two to four inches wide, being a piece of standard molding; * * * that attorney for Defendant, JAMES D. SPARKS, JR., was informed several days prior to the trial, by the District Attorney's Office, and specifically by the prosecuting attorney, * * * that such stick had been seized, that it had not been seized pursuant to a search warrant, and that it was not going to be offered into evidence; that on May 5, 1970, Deputy WILLIAM O. CAUSEY, was called to the stand to testify not that the stick had been seized, but that he saw a stick at Defendant's home, namely the one that had been seized, and that it had some substance on it which looked like fresh blood; that over objection of counsel and out of the presence of the Jury such testimony was elicited and was suppressed by the Court;

"(c) * * * that repeated reference was made to this by the prosecuting attorney in his opening and closing argument.

"(d) That as per the Affidavit of WESLEY J. HODGE, employed by the Ouachita Parish Clerk's Office, as court reporter, among other duties, and the party who transcribed these proceedings,

shortly after the testimony of the Coroner, DR. J. W. CUMMINS, Deputy MILTON SMITH brought into the Court Room a large cardboard box, containing evidentiary items some of which were subsequently admitted as STATE'S exhibits, and some of which were not offered; that said Deputy Sheriff entered through a door located in the rear of the Court Room; that the box in question was placed directly under the table where said Reporter was located and directly in front of the Jury box, being approximately four feet away from the Jury, and in plain view of each member thereof; that throughout the course of the trial the box containing said evidentiary items remained in said location; that among the items contained in said box was an item identified as a stick/board being approximately three inches wide and three to four feet in length; that said item was in plain view of the Jury throughout the trial; that said item was not introduced or offered in evidence although testimony concurring a stick/board was offered and introduced.

"(e) That neither Defendant, nor her attorney, the undersigned, was aware of the presence of said stick, in open and plain view of the Jury, until the day after the trial, namely, May 7, 1970, when said attorney made request upon the Sheriff's Office, Ouachita Parish, to examine the stick, said request solely

being made for the purposes of settling the doubt in defense counsel's mind of the existence of a stick, and whether there was any actual blood on same; that after diligent search, the stick could not be found; that defense counsel had approached the Ouachita Parish Sheriff's Department to locate said stick on the basis that it was still in their possession since it had never been offered into evidence, and it was the understanding between defense counsel and the prosecuting attorney, that it was not to be offered into evidence; that upon being informed that the stick was not in the possession of the Sheriff's Department, counsel immediately contacted the court reporter, WESLEY J. HODGE, to see if it had been inadvertently placed in the box containing the other evidentiary items, and was informed by said party that in fact said item had been in the court room during both days of the trial; and at the conclusion of the trial had been turned back over to the Ouachita Parish Sheriff's Department, and in particular, Sergeant WALTER WILHITE; that upon contacting said member of the Ouachita Parish Sheriff's Department, defense counsel was advised that it in fact had been returned at the conclusion of the trial and was in a locker, commonly referred to as a Sergeant's locker, where after a search,

it was located and examined by defense counsel.

" * * *

"(g) That this constitutes prejudicial error, in that it allowed to be presented to the Jury the alleged/purported weapon, when said weapon itself was not admissible in evidence; that said error was magnified by repeated reference of defense counsel in closing argument as to the non-existence of a stick, when in truth in fact said stick/board was approximately three feet away, in pure sight of the Jury; that such sight and viewing by the Jury, constitutes prejudicial error. And a New Trial should be granted pursuant to LSA–C.Cr.P. Article 851(4).

" * * * *"

A hearing was held on the above quoted portion of the Motion for a New Trial. Counsel for the defendant took the stand and testified with respect to the above allegations. After hearing, the trial judge denied the motion and stated:

"Well, gentlemen, I have travelled this road before. This is not my first time in which I have had those matters raised and I have always taken the position I do now that it is not the Judge's—in a Jury trial it is not the Judge's duty to weigh the evidence. That is the Jury's job and if there is any evidence at all then it is the Jury's duty to weigh that evidence

and to decide the case not the Judge and if there is no evidence, none whatsoever, then the Judge and I have on prior occasions granted a new trial but this is not the case. I think there is enough evidence here to justify the Jury to weigh that evidence and decide the case which they did. Now, as far as the stick is concerned it was never introduced in evidence and there was no evidence or nothing introduced at that time that showed that the Jury even looked at it or regarded it. As counsel pointed out, the lawyers didn't even know it was in here much less the Jury that was listening to the evidence as being given by the witnesses. Therefore, I think the Motion for a New Trial should be overruled."

Defense counsel urges in this Court that prejudicial error occurred, perhaps inadvertently, by allowing the jury to view the purported instrument allegedly used in the beating of the child, Johnny Lee Alto Vonner, and that such error is not harmless. He contends that the error was extremely prejudicial.

Defense counsel has offered no definite proof that the jury saw the stick; he, as stated by the trial judge supra, was not aware of the presence of the stick until after verdict. Under such facts and circumstances, we cannot conclude that the jury saw the stick, and we do not find that the defendant suffered prejudice. We conclude that the ruling of the trial judge was correct, and that no reversible error was committed by him.

Bill of Exceptions No. 5 is without merit.

For the reasons assigned, the conviction and sentence are affirmed.

BRAHAM, J., concurs.

TATE, J., concurs in result.

DIXON, Justice (dissenting).

I must respectfully dissent.

This court goes too far in admitting evidence of other offenses offered under color of proving "system" and "intent." Such evidence is admissible only when the *offense charged* is one of a system, or when guilty knowledge and intent is "an essential part of the inquiry." R.S. 15:446.

The majority finds that the testimony of other offenses was not offered to prove the guilt or innocence of the accused, but "to prove a system of wrong doing." Evidence of other offenses is not admissible to prove that the defendant was engaged in a system of wrongdoing, and it is not admissible to prove that the defendant is a bad person.

In addition, I cannot agree that Code of Criminal Procedure article 778 is unconstitutional in any respect.