276 So.2d 277 (1973)
STATE of Louisiana
v.
Ricardo JORDAN.
No. 52838.
Supreme Court of Louisiana.
March 26, 1973.
Rehearing Denied May 7, 1973.
*278 Edward G. Koch, Jr., Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
The defendant was convicted of murder, R.S. 14:30 and given the death sentence. He appeals his conviction and sentence relying on eight bills of exceptions reserved and perfected during the proceedings.
We need discuss only one bill.
Bill of Exceptions No. 7 was reserved by the defendant to the State's use of evidence of other offenses in its case in chief. The context in which the evidence of other offenses was used is important. The district attorney announced in the opening statement his intention to introduce bullets and shell casings used in other armed robberies for the purpose of showing system and intent.
Defendant Jordan was arrested as a result of a shooting incident on June 6, 1969 at the corner of Washington Avenue and LaSalle Street in New Orleans. Kenneth Augustine and Donald Weaver reported that a young Negro, not personally known to them, shot at them three times. Augustine and Weaver, on the day of the shooting, identified photographs of the defendant.
Ballistics experts recovered a shell casing and bullet at the scene of the Augustine and Weaver shooting. Examination dislosed that the casing had been fired in the same gun which had fired a bullet April 17, 1969 at 1901 Louisiana Avenue, in the killing of Claude Lee, and that Jordan's gun fired the pellet that killed Lee.
With a search warrant and an arrest warrant, the police arrested Ricardo Jordan, and testified that he made oral inculpatory statements concerning the shootings of Claude Lee, as well as Augustine, Weaver and two other persons. Jordan informed the police that the gun used was in the possession of one Judge Washington who resided at the Dewdrop Hotel.
With this information, the police arrested Washington, who admitted that he had Ricardo Jordan's pistol in his possession, and directed the police to the place where it was hidden. Two other persons, Smith and Tart, were arrested by the police in connection with the murder of Claude Lee, as a result of information obtained from *279 Ricardo Jordan and Judge Washington. The police testified that each of them made inculpatory admissions concerning the homicides under investigation. The four were jointly indicted and tried for the murder of Claude Lee, but a mistrial resulted, Ricardo Jordan was severed and tried alone in this case.
The police testified that Jordan admitted shooting Claude Lee during a robbery, as well as Charles Watzke on May 3, 1969 in the 1400 block of Marengo Street, and Lucy Wilson May 5, 1969 in the 3700 block of Canal Street.
Jordan attempted to repudiate the oral confession. He contended that he had been beaten and abused by the police during interrogation, and, in any event, admitted only shooting at Augustine and Weaver. He denied, on the trial, participating in the shooting of Lee, Watzke and Lucy Wilson, and denied that the gun introduced was the gun he used in the altercation with Augustine and Weaver.
The damaging evidence introduced, in addition to the police testimony concerning the inculpatory statements, consisted of the gun found in the possession of Judge Washington and shell casings and pellets recovered from the body of Claude Lee, from the person of Watzke, and from the scenes of the Lucy Wilson shooting and robbery and the Augustine and Weaver shooting. Ballistics experts determined that all came from Jordan's gun.
The real reason for the introduction of evidence of other offenses in this case does not seem to be system or intent, as contended by the State in its opening statement. It is true, as argued by the State, that murder requires a specific intent. But that specific intent required in the crime of murder in Louisiana is to kill or to commit great bodily harm. No evidence of those facts is essential in this prosecution, for there is a presumption that one intends the consequences of his act. See, C.Cr.P. 432. If one shoots another, he is presumed to kill or maim. The defense is not that the shooting was accidental, but that the defendant did not commit the offense.
It is true that the police testimony indicated a system or a pattern in the shooting of Lee, Watzke and Lucy Wilson. The police were told by the young blacks that they intended to kill any white persons they robbed. Watzke testified that he was shot after the robber had taken his wallet. Lucy Wilson was shot from behind, and her purse was taken.
But the introduction of the bullets and shell casings and gun do not tend to prove that four young blacks were engaged in a pattern of shooting and robbing white victims. For this purpose, the introduction of these items had no relevance. It does not appear that the evidence was introduced for the purpose of showing a system, or plan, or modus operandi, or intent.
Nor does this evidence tend to identify this defendant as the perpetrator of the murder of Claude Lee. It has no probative value as to the identity of the offender. It tends to substantiate the testimony concerning the confession, but that is no exception to the general rule which excludes evidence of extraneous offenses. It tends to prove only that this gun shot Watzke and Wilson. If the defendant had made a separate confession to the shooting of Watzke and Wilson (and there were no bullets or shell casings), that confession would not be admissible in this case. The prejudicial effect of the introduction of such evidence far outweighs its probative value for proving this offense.
Formerly, evidence of other offenses was inadmissible, with certain limited and specified exceptions. See, State v. Rives, 193 La. 186, 190 So. 374. The Code of Criminal Procedure of 1928 seemed to permit the use of evidence of other offenses when the offense was one of a system, when the evidence was admissible to prove continuity, but "not to prove the offense *280 charged." Article 446 of the Code of Criminal Procedure of 1928; R.S. 15:446. However, article 495 of the Code of Criminal Procedure of 1928 contained a proviso which allowed a witness or a defendant to be cross-examined on arrests and indictments. Act 180 of 1952 eliminated this proviso, substituting the provision that neither a witness nor the defendant could be asked on cross-examination whether he had ever been arrested or indicted.
The proposition that evidence of other offenses was inadmissible was quickly eroded in Louisiana. Many Louisiana cases have approved the admission of evidence of other offenses when it has probative value, tending to prove the offense charged. State v. Bradford, 259 La. 381, 250 So.2d 375 (1971); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971); State v. Morris, 259 La. 1001, 254 So.2d 444 (1971); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970).
The cases are legion in armed robbery, narcotics, sex and homicide offenses where evidence of other crimes was admitted to prove the identity of the offender. See, e. g., State v. Dotson, supra; State v. Morris, supra; State v. Bradford, supra; State v. Spencer, 257 La. 672, 243 So.2d 793 (1971); State v. Kreller, supra; State v. Clack, 254 La. 61, 222 So.2d 857 (1969); State v. Crook, 253 La. 961, 221 So.2d 473 (1969); State v. Lawrence, 251 La. 1085, 208 So.2d 685 (1968); State v. Welch, 250 La. 719, 198 So.2d 902 (1967); State v. Reese, 250 La. 151, 194 So.2d 729 (1967); State v. Evans, 249 La. 861, 192 So.2d 103 (1966); State v. Morris, 245 La. 175, 157 So.2d 728 (1963).
Nevertheless, we have not and do not relax the general rule excluding evidence of extraneous offenses to such an extreme that we would approve the introduction of evidence which tends only to prove the bad character of the defendant when he has not put his character at issue.
Where the identity of the offender is an issue, evidence of other similar offenses related in time, place and method may be admissible, provided the nature of such evidence is explained in the opening statement; the defendant would, of course, be entitled to a jury instruction[1] limiting the effect of such evidence.
The conviction and sentence are set aside, and the case is remanded for a new trial.
SANDERS and SUMMERS, JJ., dissent.
HAMLIN, Chief Justice (dissenting):
I respectfully dissent from the majority opinion which has found Bill of Exceptions No. 7 reserved during the opening statement of the District Attorney and reurged during trial to be with merit.
For the purpose of thoroughly explaining my reasons for dissent, I quote the following pertinent part of the District Attorney's opening statement:
"After qualifying technician Alex Vega as an expert in the field of ballistics, he will testify that the spent casings found at the scene on LaSalle Street, and that the spent casings found at the scene of the Claude Lee murder were fired by the same gun. After qualifying Dr. Waldo Bernard as an expert in the field of medicine, you will hear his testimony as to the cause of Claude Lee's death. The death of Claude Lee was a result of a gunshot wound in the chest. Gentlemen, in order to show system and intent and guilty knowledge on the part of the defendant, the State will offer and introduce into evidence, testimony by Mr. Charles Watzke, that on *281 May 3, 1969 at approximately 12:10 A.M., he was in the 1400 block of Marengo Street in this city. He noticed two negro males walking behind him at a faster pace. He stepped aside to let them pass, and one of the subjects produced a pistol and told the other subject to take his, the Watzke money. And, Charles Watzke told them they could have his money and pleaded with them not to hurt him. It was while he was pleading, that the subject with the gun shot him in the chest. The subjects then fled. The facts will show that Ricardo Jordan was one of the subjects responsible for this shooting. A 25 caliber spent casing was found on the scene of this shooting also. In order to show system and intent and guilty knowledge on the part of the defendant, the State will also offer to introduce into evidence, testimony by Lucy Wilson, that on May 5, 1969 at approximately 9:50 P.M. she was on her way home from the grocery, walking on Canal Street in this city. She heard footsteps behind her and the next thing she knew she felt someone hit her and she saw a flash. She had been shot from behind in the head. The facts will show that Ricardo Jordan was one of the assailants of Lucy Wilson. A 25 caliber spent casing was found on the scene of this brutal shooting also. After being qualified as an expert in the field of ballistics, Alex Vega will testify that the 25 caliber spent casing found at the scene of the Charles Watzke shooting, the 25 caliber spent casing found at the scene of the Lucy Wilson shooting, the 25 caliber spent casing at the scene of the assault of Weaver and Augustine, and the 25 caliber spent casing found on the scene of the Claude Lee murder were all fired by the same weapon. After laying the proper foundation, the State will offer to introduce and file in evidence the prose verbal of the Orleans Parish Coroner's Office, photographs of the scene, photographs taken at autopsy, photographs taken at location of the discovery of the gun, 1-25 caliber automatic pistol, 1-25 caliber spent casing, and 1-25 caliber live shell found at the scene of the assault on Weaver and Augustine, 1-25 caliber spent casing found at the scene of the murder, 1-25 caliber pellet removed from the body of deceased, 1-25 caliber spent casing found at the scene of the Lucy Wilson shooting, and one 25 caliber spent casing found at the scene of the Charles Watzke shooting, and one 25 caliber pellet removed from the body of Charles Watzke. * * *" (Emphasis mine)
At the conclusion of the above statement, defense counsel moved for a mistrial, contending that the District Attorney's opening statement which contained allegations of other crimes, other than the one that Ricardo Jordan was being tried for, based on system and intent, was prejudicial and unconstitutional.
The motion for a mistrial was denied, and the objection of defense counsel was overruled.
The witnesses enumerated in the District Attorney's opening statement supra testified as to those facts recited in said statement. Defense counsel objected to the witnesses' testimony; cross examination was permitted but not availed of to any extent.
In his per curiam to Bill of Exceptions No. 7, the trial judge states that since the Watzke and Wilson shootings were admitted for the purpose of proving system and intent, Article 770 of the Code of Criminal Procedure did not apply, and defendant was not entitled to a mistrial.
Article 770 of the Code of Criminal Procedure provides that a mistrial shall be ordered when a remark or comment made within the hearing of the jury by the District Attorney during the trial or in argument refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
LSA-R.S. 15:445 provides that in order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment; even though intent is a question of fact, it need not be *282 proven as a fact, it may be inferred from the circumstances of the transaction.
LSA-R.S. 15:446 provides that where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged.
The majority opinion finds that LSA-R.S. 15:445 and 15:446 are not applicable to the instant prosecution; it states:
"It is true that the police testimony indicated a system or a pattern in the shooting of Lee, Watzke and Lucy Wilson. The police were told by the young blacks that they intended to kill any white persons they robbed. Watzke testified that he was shot after the robber had taken his wallet. Lucy Wilson was shot from behind, and her purse was taken.
"But the introduction of the bullets and shell casings and gun do not tend to prove that four young blacks were engaged in a pattern of shooting and robbing white victims. For this purpose, the introduction of these items had no relevance. It does not appear that the evidence was introduced for the purpose of showing a system, or plan, or modus operandi, or intent."
I disagree with the above findings of the majority opinion. The instant victim was shot on April 18, 1969; the related events took place within approximately two weeks of the shooting. In State v. Kreller, 255 La. 982, 233 So.2d 906, we held that testimony concerning narcotic transactions occurring shortly after the one for which the defendant was charged was admissible in evidence for the purpose of proving guilty knowledge, intent, and system. I find that the testimony of the witnesses enumerated in the District Attorney's opening statement and the evidence pertinent thereto were admissible in evidence to show the intent and system of the defendant with respect to shooting. The testimony of the witnesses, which I have read, recites a system of shooting; certainly system and intent are ingredients of the crime charged against the defendant. In my opinion, the evidence and testimony were matters for the jury to consider; the members of the jury received a general charge which instructs that they find the defendant guilty only of the crime charged and not of other offenses.
In Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919, the United States Supreme Court held that evidence of similar and related offenses were admissible in evidence to show a consistent pattern of conduct highly relevant to the issue of intent. I believe that herein the witnesses' testimony described a system of conduct highly relevant to the defendant's intent of shooting the instant victim.
"It is also established law that evidence of other crimes for which the defendant is not charged is admissible to establish essential elements of the charged crimes, to show a single scheme or common pattern of illegal conduct. * * *" United States v. Hampton, 457 F.2d 299 (7 Cir. 1972). I also believe that herein the testimony of the witnesses was admissible in order that the State could attempt to prove a common pattern of conduct on the part of the defendant. See also, United States v. Clifton, 447 F.2d 970 (5 Cir. 1971); State v. Bradford, 259 La. 381, 250 So.2d 375 (1971); State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972).
It is true that the defendant did not put his character at issue, Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 1948), but as stated and reasoned supra, the instant evidence and testimony were not employed to prove bad character.
In a criminal prosecution, the burden is on the State to prove beyond reasonable doubt the guilt of the defendant of the crime with which he is charged; this burden must be borne with responsibility, fairness, integrity, and legal knowledge. The *283 jury assesses the guilt or innocence of the defendant; it must be given a thorough presentation by the State of the alleged facts which comprise the defendant's alleged guilt. To preclude the State from offering the instant evidence and testimony would, in my opinion, be a curtailment of justice to the State. I find that the defendant's right to a fair trial was not prejudiced by the State's offering of the instant evidence and testimony; I find no violation of defendant's constitutional rights by either the State or the ruling of the trial judge.
In my opinion, Bill of Exceptions No. 7 is without merit, and for the above reasons, I respectfully dissent.
NOTES
[1] Such as that in State v. Billstrom, 276 Minn. 174, 149 N.W.2d 281, 285 (1967): "It is the court's duty to advise the jury in unequivocal language that defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment."