295 So.2d 168 (1973)
STATE of Louisiana
v.
Emile GRANT and Albert Dixon.
No. 53628.
Supreme Court of Louisiana.
October 29, 1973.
*169 Barry F. Viosca, William H. Byrnes, III, Orleans Indigent Defender Program, Clement F. Perschall, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Emile Grant and Albert Dixon were jointly tried and convicted for the armed robbery of Benny Gibson. La.R.S. 14:64. Each was sentenced to serve thirty (30) years at hard labor in the Louisiana State Penitentiary. A subsequent bill of information was filed against each defendant charging him as a multiple offender. La. R.S. 15:529.1. Each defendant entered a plea of guilty to the charge of being a multiple offender. The sentences previously imposed on the armed robbery conviction were retracted and each defendant was sentenced to serve sixty (60) years imprisonment at hard labor in the state *170 penitentiary in accordance with our multiple offender law. Both defendants have been here afforded out of time appeals from their robbery conviction. They rely upon three bills of exceptions to obtain a reversal of their convictions and sentences.[1]
Bills of Exceptions 1 and 2 were reserved when the trial judge admitted into evidence over defendants' objection certain testimonial evidence of another attempted armed robbery allegedly committed by the defendants approximately one hour after the crime charged. Defense counsel argues in brief that the admission of this evidence of another crime was highly prejudicial, and constitutes reversible error. State v. Prieur, 277 So.2d 126 (La.1973); State v. Moore, 278 So.2d 781 (La.1973); State v. Jordan, 276 So.2d 277 (La.1973).
The following facts were established at defendants' trial.
Benny Gibson testified that on May 22, 1966, between 10:30 p. m. and 11:00 p. m. he was approached from the rear by persons unknown, one of whom struck him behind the head with a long knife. Someone ran his hands through Gibson's pockets, removing the money contained thereon. He was then forced to lie face down on the pavement while his watch, rings, hat and shoes were removed. He was then struck on the head with the blade of the knife and told to run. He ran into a nearby barroom, from which he was taken to Charity Hospital for stitches to close the wound in his head. He was still at the hospital when the investigating police officers arrived and took his statement. Gibson testified that he did not see his robbers and could not identify them. He judges from their voices that they were black males.
Between 11:00 p. m. and 11:30 p. m. on the same night, one George Shaffer was returning to his house in the 2400 block of Canal Street when he was accosted by two black males. Shaffer testified that the men passed him on the street. One of them grabbed him from behind around the neck. He said that he saw no weapon at that time, but felt a sharp object in his back. His attacker told him to "hand over the money or we'll cut you." Shaffer was able to pull free from the man and stumbled into Canal Street. He positively identified his attackers as the defendants, Grant and Dixon. Bill of Exceptions No. 2 was reserved to Shaffer's testimony concerning the attempt to rob him.
Bill of Exceptions No. 1 was reserved when one of the officers who arrested the defendants testified as to the events surrounding the arrest. Detective Eugene Knight testified that he and his partner were cruising in the 2400 block of Canal Street, about six or seven blocks from the scene of the Gibson robbery, about 11:30 p. m. on May 22, 1966, when they saw two black men struggling with a white man on the other side of the street. The officers, who were in plain clothes and an unmarked car, went to the corner to make a U-turn. When they arrived at the scene they encountered George Shaffer, who told them that the men had been trying to rob him. The men were still in sight, so the officers had Mr. Shaffer get into the police car and proceeded in pursuit of the men. The officer testified that they pulled up next to the men and identified themselves as police officers. The men then fled and the officers gave chase, one on foot and the other in the car. Det. Knight testified that when he and his partner identified themselves as police officers, the suspects threw down a hat and a pair of shoes. After giving chase, the suspects were cornered and one pulled out a large machete type knife. The officers, who had their guns drawn, ordered the man to drop *171 the knife, which he did. Both men were then placed under arrest and frisked. One of the men had a watch in his pocket. The officer positively identified the defendants as the men he arrested that night. Defendant Grant was identified as the man with the knife. Dixon was identified as the man who dropped the shoes. Det. Knight said the watch was seized from defendant Grant's pocket.
The officers then conveyed the subjects to police headquarters. At that time they learned of the robbery of Benny Gibson and returned to the scene and retrieved the hat and shoes they had witnessed the defendants discard.
Benny Gibson positively identified the watch taken from the defendant as being the one stolen from him in the course of the robbery. He also positively identified the hat and shoes retrieved from the scene as being his property.
An expert from the police crime lab testified at defendants' trial that the blade of the knife seized from the defendants contained type B human blood. It was stipulated that the victim, Benny Gibson, had type B blood. The expert testified that only 10 per cent of the population has type B blood.
It is in this factual context that the defendants urge that we hold that the testimony concerning the attempt to rob Shaffer inadmissible. The state, on the other hand, contends that the testimony was admissible to show knowledge, system and intent, identity, and the circumstances surrounding the arrest of the accused.
This court has rendered several decisions recently dealing with the issue of admissibility of evidence of other crimes. State v. Prieur, State v. Moore, and State v. Jordan, supra. The thrust of these decisions is that evidence of other crimes is inadmissible merely to show the bad character of the defendant or his predisposition to commit crimes. Such evidence may, however, be admitted where it has independent relevance to show guilty knowledge, intent, or system, provided the probative value of the evidence outweighs the prejudicial effect evidence of this character inevitably has on the jury. We therefore held in State v. Prieur, supra, that such evidence is not admissible where it is merely repetitive or cumulative. In Prieur we set forth certain procedural safeguards relative to use of other crimes by the State, to be made applicable to the retrial of defendant Prieur and to all criminal cases tried after the date of finality of judgment in Prieur (application for rehearing in Prieur was denied March 26, 1973). They are not applicable in this case because it was tried on February 15, 1967.
The state offers two grounds under which it claims the testimony of George Shaffer and Det. Knight concerning the attempted robbery were admissible. The position of the state is that this testimony was admissible to show the circumstances surrounding the accuseds' arrest, and to show system, intent and identity.
It is true that it is relevant to show the facts and circumstances attending the arrest of the accused when they logically tend, in any degree, to connect the defendant with the perpetration of the crime. State v. Richard, 245 La. 465, 158 So.2d 828 (1963); State v. St. Amand, 274 So.2d 179 (La.1973); 1 Wharton's Criminal Evidence, Sec. 372-73. However, relevancy is only one of the tests for admissibility of evidence of other crimes. It must also be determined that the probative value of the evidence outweighs its potential for prejudice. State v. Moore, supra.
In this case a distinction must be drawn between the admissibility of the physicial evidence seized from the defendants and the circumstances surrounding their arrest. The relevancy of the physical evidence seized, i. e. the hat and the shoes of Gibson discarded by the defendants and Gibson's watch which was still in the pocket of one of the defendants, is beyond question. Its probative value is likewise *172 unassailable, as the possession of this evidence formed the basis for the application of the statutory presumption that the unexplained possessor of recently stolen goods is the thief. La.R.S. 15:432 (See bill of exceptions No. 3, infra). Likewise the possession of the machete type knife containing human blood of the type of Benny Gibson was relevant to the issue of identity. However, these items of physical evidence could have been admitted into evidence without describing the details of the attack on Shaffer. It was sufficient for admissibility of these items of physical evidence for the officers to testify that they had reason to arrest the defendants, that when the officers identified themselves the defendants attempted to flee, discarding the various items of physical evidence, that upon apprehending the defendants the watch and machete were seized, and that the physical evidence thus seized was identified by the victim, Benny Gibson, as his property, and that the machete was turned over to the crime lab for analysis. Thus the chain of evidence could have been established without the necessity of admitting details of the attempt to rob George Shaffer. Cf., State v. Cosie and Duplessis, 295 So.2d 165 (La.1973) (No. 53,672 on the docket of this Court, decided this date). Had the defendants then raised an issue by way of defense such as lack of probable cause to arrest, the attempt to rob George Shaffer could have been admitted by way of rebuttal.
We find, however, that the evidence of the attempt to rob George Shaffer was admissible under the state's alternate theory of admissibility.
Our jurisprudence is uniform in holding that evidence of other armed robberies is admissible where almost identical tactics are used to show the "system" or modus operandi employed by the defendant.[2] See State v. Prieur, supra; State v. Carney, 260 La. 995, 257 So.2d 687 (1972); State v. Modelist, 260 La. 945, 257 So.2d 669 (1972); State v. Moore, supra; State v. Montegut, 257 La. 665, 243 So.2d 791 (1971); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971).
In State v. Moore, supra, we dealt with a prosecution for aggravated rape. The facts of that case were set forth by the Court as follows:
"The rape with which the defendant is accused occurred on Saturday, September 18, 1971 at about 4:00 p.m. A young black man approached the married woman, who was about twenty-eight years old, from the rear while she was studying in a vacant classroom in the Life Science Building on the LSU campus in Baton Rouge. She was dragged out of the room, across the hall and into *173 a ladies restroom about thirty to fifty feet away from the classroom, where the rape occurred.
"The other offense, offered ostensibly to prove intent, etc., occurred in Foster Hall which is about four or five blocks distant from the Life Science Building. The date was Tuesday, September 14, 1971, and the time was about 8:30 p.m. The victim, an unmarried woman, about twenty years old, was studying in a vacant classroom, but classes were in session at the other end of the hall. Her assailant, a black man, twice entered the room where she was studying. She mistook him for a janitor, and he acted as if he were a custodial employee. The second time he entered the room, he closed the blinds and attacked her in the classroom." 278 So.2d at 784-785.
The Court held that the evidence of the September 14 rape was inadmissible in the prosecution of the defendant for the September 18 rape.
The Court stated:
"The evidence of the rape of September 14 did not in any way tend to prove the identity of Napoleon Moore as the person who committed the rape of September 18. Except that the two victims were in classrooms when approached by their assailants, there is no evidence of a system, a design, a plan or modus operandi. The evidence tends only to prove the bad character of Napoleon Moore, an inquiry prohibited in Louisiana. The evidence of defendant's guilt of the rape of September 14 does not tend to show that he is the one who committed the rape of September 18." 278 So.2d at 788.
In the instant case, each victim was approached from the rear. One victim was cut with a large knife; the other felt something sharp in his back and was told to "hand over the money or we'll cut you." Each victim was alone and on foot. The two crimes were committed within a one hour time span and within a six block radius of each other. Each victim was attacked by more than one assailant.[3] Both victims identified their assailants as black males. We hold that due to the similarity in methods used in these two crimes, and the close connexity in both time and distance between the offenses, evidence of the attempt to rob George Shaffer was admissible in the prosecution of these defendants for the armed robbery of Benny Gibson in order to show "system," or modus operandi. La.R.S. 15:445, 15:446. We find that the evidence was relevant and that its probative value outweighed its potential for prejudice to the defendant.
Bill of Exceptions Nos. 1 and 2 are therefore without merit.
Bill of Exceptions No. 3 was reserved when the trial judge overruled defendants' motion for a new trial. The motion for a new trial reurged the alleged errors demonstrated by Bills of Exceptions Nos. 1 and 2, and additionally urged that the trial judge erred in charging the jury that "in a robbery, the possessor of recently stolen goods is presumed to be the robber" and in allegedly "accenting each word with a strong rap on the bench with his pen."
The motion for a new trial, insofar as it applies to Bills of Exceptions Nos. 1 and 2 is without merit for the reasons assigned in disposing of those bills.
The third ground urged is that the trial judge erred in his charge to the jury. The transcript and minutes of the court do not reflect that an objection to the charge was made at the time it was given. La.C.Cr.P. art. 841 states:
"An irregularity or error in the proceedings cannot be availed of after verdict unless it is objected to at the time of its occurrence and a bill of exceptions *174 is reserved to the adverse ruling of the court on such objection. Failure to reserve a bill of exceptions at the time of an adverse ruling of the court operates as a waiver of the objection and as an acquiescence in the irregularity or ruling.

"This requirement shall not apply to:
"(1) A ground for arrest of judgment under Article 859, or the court's ruling on a motion in arrest of judgment; or
"(2) The court's ruling on a motion for a new trial based on the ground of bills of exceptions reserved during the trial." (emphasis added)
The failure of the defense counsel to object to the charge at the time it was given operates as a waiver of the objection and an acquiescence in the ruling complained of under the above cited article. While the alleged conduct of the trial judge, if true, is improper and could be considered as a prohibited comment upon the evidence if substantiated, we cannot review the allegation in the absence of a contemporaneous objection and/or motion for a mistrial.
Bill of Exceptions No. 3 is without merit.
For the reasons assigned, the conviction and sentences of these defendants is affirmed.
SANDERS, C. J., concurs in the result.
MARCUS, J., concurs.
SUMMERS, J., concurs and assigns reasons.
SUMMERS, Justice (concurring).
I agree with the result reached, but I do not subscribe to the apparent approval of the decisions in State v. Prieur, 277 So.2d 126 (La.1973); State v. Moore, 278 So.2d 781 (La.1973) and State v. Jordan, 276 So.2d 277 (La.1973).
While agreeing that these convictions and sentences should be affirmed, I cannot subscribe to the Court's apparent approval of State v. Prieur, 277 So.2d 126 (La. 1973); State v. Moore, 278 So.2d 781 (La.1973) and State v. Jordan, 276 So.2d 277 (La.1973). All three of these cases, decided by a bare majority in a situation where the personnel of the Court was in a state of change, are tenuous authority at best. Their effect will, moreover, prove inimicable to the administration of justice, frustrating, complicating and encumbering the prosecution, serving only to free the felon to prey with impunity upon society. Many of the reasons for my disapproval of these decisions are set forth in the dissents. I adhere to those reasons.
NOTES
[1] The minutes of court on July 10, 1972 (Tr. 28), reflect that defendant, Emile Grant, was granted an out of time appeal. The minutes (Tr. 44) for defendant Albert Dixon state that the minute entries are the same as for Emile Grant. It is therefore presumed that Albert Dixon was also granted an out of time appeal on July 10, 1972. The bills of exceptions are treated as applying to both co-defendants. La.C.Cr.P. art. 842.
[2] The use of the word "system" to connote modus operandi does not truly conform to the language of La.R.S. 15:446 which states:

"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
Properly construed, the language of La.R.S. 15:446 refers to offenses which taken together represent a systematic crime such as embezzlement, counterfeiting, forgery, etc. See State v. Spencer, 257 La. 672, 243 So.2d 793 (1971), wherein the discrepancy between the statutory language and the application of the statute in the jurisprudence was discussed. Our jurisprudence is uniform, however, in regarding "system" as synonymous with modus operandi.
Modus operandi is more properly considered a means of establishing identity, a separate exception to the rule excluding evidence of other crimes at common law. See McCormick's Handbook of the Law of Evidence, Sec. 190 (Cleary Ed.1972), where the identity except at common law is discussed. It is there pointed out that the identity exception is extremely narrow. In order to be admissible at common law, the modus operandi must so clearly point to the accused as to be the equivalent of a signature. See also Jones, Other Crimes Evidence in Louisiana, 33 La. L.Rev. 614 (1973). Our jurisprudence, however, has never given so restrictive an interpretation to the modus operandi exception.
[3] Shaffer, who saw and positively identified his assailants, testified that there were two of them. Gibson, who was made to lie face down on the ground and who could not identify his assailants was certain only of the fact that there was more than one.