973 So.2d 927 (2007)
STATE of Louisiana, Appellee
v.
Anthony T. SCOTT, Appellant.
No. 42,871-KA.
Court of Appeal of Louisiana, Second Circuit.
December 19, 2007.
*928 Louisiana Appellate Project by Peggy J. Sullivan, Monroe, for Appellant.
Jerry L. Jones, District Attorney, Geary Stephen Aycock, Assistant District Attorney, for Appellee.
Before CARAWAY, PEATROSS and DREW, JJ.
DREW, J.
Anthony T. Scott was convicted at jury trial as charged of second degree murder, aggravated burglary, and armed robbery. He was sentenced to a term of life imprisonment at hard labor without benefits for second degree murder.
Scott was ordered to serve 20 years at hard labor for aggravated burglary, and 30 years' hard labor without benefits for armed robbery. The sentences for these two crimes were ordered to be served concurrently, but both of these lesser sentences *929 were ordered to be served consecutively with the life imprisonment sentence. The defendant appeals his conviction for second degree murder and his sentences. He does not appeal his convictions for the other crimes.

FACTS
Jimmy Raus, 70 years old, was a collector, and his home contained caches of watches, knives, cigarette lighters, ducks, butterflies, and other items. On August 29, 2005, he was beaten to death, suffering 19 separate blunt force trauma impact sites. A 911 call was made from Mr. Raus' residence that day by the defendant and a juvenile, Dewayne Campbell. When the police arrived, they found the body and three people: the defendant; the defendant's girlfriend, Doneshia Gory; and Campbell. Mr. Raus had been stabbed or cut 41 times.
Scott, Campbell, and Gory were taken to the Sheriff's Office for questioning. During his first interview, the defendant said he, Campbell, and Gory stopped by Mr. Raus' house, discovered Mr. Raus had been attacked, and called 911.
Later, Scott, gave a recorded stateinent in which he admitted that he:
 committed the burglary, though he denied killing Mr. Raus;
 broke into the Raus residence to look for cash;
 used wooden sticks in attempting, without success, to pry open a window;
 entered through a different unlocked rear window;
 remained in the house a few hours;
 found and put on gloves;
 took an air pump and a bag/carrying case with handles, in which they placed rolls of coins, a two dollar bill, watches, and other items;
 tried to open a trunk with a kitchen knife when Mr. Raus came home;
 was yelled at by Mr. Raus,
 attempted to escape out a window when Campbell began hitting Mr. Raus with a vase;
 saw Mr. Raus fall to the hallway floor, then try to stand;
 saw Mr. Raus strike Campbell a couple of times;
 observed Campbell stab Mr. Raus in the chest with a knife twice;
 told Mr. Raus that he was sorry and then stabbed him in the chest once;
 went through Mr. Raus' pocket and took some money;
 took off his gloves and discarded them inside the house;
 broke out the glass of the back window and crawled out;
 saw Campbell leave the house through the back door when he (the defendant) exited through the window;[1]
 observed that Mr. Raus was still alive when he left; and
 returned to the house 30 minutes later and called 911.
Defendant denied that he cut or injured himself inside the home, and he explained a cut on his hand by maintaining that he was injured when he went back to the home to check on Mr. Raus.
The defendant provided a DNA sample and allowed the photographing of his cut hands, his clothing, and his shoes.
The crime scene investigation revealed that:
 the back door was unlocked but closed;
 the rear window of the home had been broken from the inside;

*930  blood samples from that window sill and from a five dollar bill taken from Scott were determined to have come from the defendant;
 a pair of bloody blue latex gloves was found near the body;
 a blood-stained work glove and a bloody filet knife were found near the window from which the defendant exited after the attack;
 a black-handled knife with bent tip was recovered from another room;
 the locks of the trunks had visible damage; and
 another brown-handled knife was found on the floor of the doorway between the kitchen and living area.[2]
Officers recovered from Campbell's house an air pump and a bag containing numerous wrist watches, a two dollar bill, assorted change and cigarette lighters, including Mr. Raus' personal lighter.
After the convictions, a presentence investigation report was ordered. At a sentencing hearing, the trial court allowed the daughter of Mr. Raus' best friend to state how all their lives have been negatively affected by the brutal and senseless murder. The defendant did not speak.
The trial court, in an extensive and well-reasoned explanation:
 stated that it considered the factors set forth in La. C. Cr. P. arts. 883 and 883.1 regarding concurrent and consecutive sentences, together with the sentencing considerations and aggravating and mitigating factors contained in La: C. Cr. P. art. 894.1;
 meticulously and laboriously set forth those factors and considerations for the record;
 reviewed the facts of this case, and impact on victims;
 remarked that though Scott was young (21 at the time of sentencing), he had been arrested 67 times between the ages of 12 and 17;
 sentenced the defendant as outlined above; and
 denied an oral motion to reconsider sentence.

SUFFICIENCY
Defendant argues that:
 the state failed to prove beyond a reasonable doubt that the defendant had specific intent to kill or inflict great bodily harm upon the victim;
 the only definitive evidence adduced by the state regarding who killed Mr. Raus was the defendant's statement, which only admitted stabbing Mr. Raus once, in the chest, bending the knife;
 some of Mr. Raus' wounds were superficial;
 Mr. Raus died of a combination of injuries;
 he did not cut Mr. Raus' throat; and
 he broke out a window to escape.
Although the record does not reflect that defendant filed a motion for post verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Henson, 38;820 (La.App. 2d Cir.9/22/04), 882 So.2d 670; State v. Green, 28,994 (La.App. 2d Cir.2/26/97), 691 So.2d 1273.
*931 Our law on a sufficiency review is well settled.[3]
The defendant was charged by amended bill of information with second degree murder, contrary to the provisions of La. R.S. 14:30.1 A(1). To support a conviction of second degree murder, the state must show that the defendant had specific intent to kill or inflict great bodily harm. State v. Brooks, 505 So.2d 714 (La. 1987), cert. denied; State v. Ruffins, 32,870 (La.App. 2d Cir.12/10/99), 748 So.2d 614. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the proscribed criminal consequences to follow his act or his failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied; State v. Ruffins, supra.
To support a conviction as a principal to specific intent second degree murder, the state must show that the defendant had the specific intent to kill or inflict great bodily harm; the mental state of one defendant may not be imputed to another defendant. State v. Cedrington, 98-253 (La.App. 5th Cir.12/16/98), 725 So.2d 565, writ denied, XXXX-XXXX (La.6/4/99), 743 So.2d 1249, writ denied, XXXX-XXXX (La.6/25/99), 745 So.2d 1182.
Under all the circumstances shown, an intent to kill might be reasonably inferred from the intentional use of a deadly weapon to produce injuries involving serious risk of death. State v. Butler, 322 So.2d 189 (La.1975); State v. Jordan, 276 So.2d 277 (La.1973); State v. Lee, 275 So.2d 757 (La.1973). Specific intent to kill can be inferred by the intentional use of a deadly weapon such as a knife or a gun. See State v. Templet, 2005-2623 (La.App. 1st Cir.8/16/06), 943 So.2d 412, writ denied, 2006-2203 (La.4/20/07), 954 So.2d 158.
In State v. McAllister, 366 So.2d. 1340 (La.1978), the court found that the jury's determination at the first trial that a codefendant killed the victim in the "heat of passion" did not prevent the state from charging the other defendant with first degree murder.
A review of this record under the Jackson standard supports the defendant's conviction *932 of second degree murder, including the specific intent to kill or inflict great bodily harm. The defendant, by his own admission, stabbed Mr. Raus in the chest with a knife; an intent to kill might be reasonably inferred from the intentional use of a deadly weapon to produce injuries involving serious risk of death. See State v. Butler, supra; State v. Jordan, supra; State v. Lee, supra. The lesser burden of specific) intent to inflict great bodily harm is sufficient for a first degree murder conviction. The totality of the evidence easily supports this conviction.

CONSECUTIVE SENTENCES
Defendant claims that consecutive sentences here are unjustified. Our law on review of consecutive sentences is well settled.[4] Defendant received three sentences:
 20 years (out of a possible 30 years) at hard labor on the aggravated burglary conviction, which sentence was ordered to be, served concurrently with the armed robbery sentence, but consecutively with the second degree murder sentence;
 30 years (out of a possible 99 years) at hard labor without benefits on the armed robbery conviction, which sentence was ordered to be served concurrently with the aggravated burglary sentence, but consecutively with the second degree murder sentence; and
 life imprisonment at hard labor, without benefits, on the second degree murder sentence, to be served consecutively with the other two concurrent sentences.
We find no abuse of the trial court's broad discretion in its sentencing. The trial court was very thorough in explaining *933 its sentencing. The defendant committed three horrific crimes, and running two of these three sentences concurrently was more than ample mercy for this defendant, who showed no mercy whatsoever towards this elderly victim.

DECREE
The defendant's convictions and sentences are AFFIRMED.
NOTES
[1] He later said that Campbell was still in the house when he left.
[2] Expert testimony indicated that only one knife caused any of the wounds suffered by Mr. Raus.
[3] The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational' trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.

The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
[4] A trial judge has wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set, aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, XXXX-XXXX (La.12/13/04), 893 So.2d 7; State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330; State v. Hardy, 39,233 (La.App. 2d Cir.1/26/05), 892 So.2d 710. The trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.

When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single cause of conduct are not mandatory, and it is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Johnson, 42,323 (La.App. 2d Cir.8/15/07), 962 So.2d 1126; State v. Boudreaux, 41,660 (La.App. 2d Cir.12/13/06), 945 So.2d 898; State v. Robinson, 33,921 (La.App. 2d Cir. 11/01/00), 770 So.2d 868.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Johnson, supra; State v. Boudreaux, supra; State v. Mitchell, 37,916 (La.App. 2d Cir.3/03/04), 869 So.2d 276, writ denied, 04-0797 (La.9/24/04), 882 So.2d 1168, cert. denied; State v. Maxie, 30,877 (La.App. 2d Cir.8/19/98), 719 So.2d 104. Among the factors to be considered are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for defendant's rehabilitation, and whether defendant has received a benefit from a plea bargain. See State v. Maxie, supra.