*561
 
 HIGGINS, Justice.
 

 The district attorney filed a bill of information against Arthur J. Childers, James E. (Jim) Childers, E. G. Roland, Ed Sorrell, E. E. Lindsey and N. H. Kelly, white men, and Brad Burton, J. W. Jackson and George Mayhorn, negroes, jointly, charging them with forging and uttering “a certain instrument purporting to be the last will and testament of Jennie Bonner, dated July 14, 1937, in the form of a nuncupative will by private act, knowing the same to be false and forged with the intent to injure and defraud.” The State entered a nolle prosequi as to Ed Sorrell. N. H. Kelly was never apprehended. The remaining accused were tried and found guilty as charged by the jury. The defendants, E. E. Lindsey, Brad Burton, J. W. Jackson and George Mayhorn were sentenced by the district judge to a term of not less than one nor more than three years at hard labor in the State Penitentiary, and the defendants, E. G. Roland and Arthur Childers, were sentenced to a term of not less than two nor more than six years at hard labor in the State Penitentiary. These parties appealed from the convictions and sentences.
 

 The other defendant, James E. Childers, after his conviction, was additionally charged as a second offender and pleaded not guilty. His case for that reason is still pending in the trial court.
 

 This prosecution followed the attempted probate of the purported will of Jennie Bonner in her succession where it was held to be a forgery. Succession of Bonner, 192 La. 299, 187 So. 801.
 

 The attorney for the accused has asked us to remand the case to the district court for the purpose of placing in the record a motion for a continuance, which was overruled by the trial court and to which ruling a bill of exception was reserved. It is stated that when the attorney prepared the bills of exception, which were presented to the trial judge for his per curiam, the motion for the continuance was not in the record; that the leading trial attorney, a member of the Legislature, was attending its session and unable to give the matter his attention; and that he associated another attorney, who, due to his unfamiliarity with the case and the fact that the motion for the continuance was not in the record, overlooked having the bill of exception on this question presented to the judge for his per curiam and signature. The district attorney refused to accede to defense attorney’s request to have this contemplated bill placed in the record on the ground that the request came too late. The State’s attorney also objected to having the case remanded to complete the record, upon the additional grounds: (1) That the motion for the continuance was without merit, it appearing that the information was filed against the accused on July 1, 1938, and that upon the motion of the defendants, the case had been continued several times and, as it was not tried until May 1, 1940, the accused were guilty of lack of due diligence because they had been'afforded more than ample time within which to prepare for the trial and to secure the names and addresses of the three alleged witnesses and to have them regularly summoned; and (2) that if any injustice had been done the defendants
 
 *563
 
 by the judge refusing a continuance, they failed to call the court’s attention to any abuse of its discretion in that respect in their motion for a new trial.
 

 It is admitted that the proposed bill of exception was neither presented to the trial judge for his per curiam and signature nor filed of record. It is too late to have that done after the appeal has been taken and the transcript has been lodged in this court. There is nothing in the motion to remand nor in the record which shows that an injustice was done the accused by the refusal to grant the continuance, or would be done them by our refusal to remand the case for the purpose of having this contemplated bill made a part of the transcript. On the contrary, the district attorney’s position is substantiated by the record for it appears that the defendants had plenty of time to make an investigation in order to ascertain the names and addresses of the witnesses and to have them subpoenaed. In view of the defendants’ lack ’of diligence in this respect, the motion to remand the case is denied.
 

 The accused are depending upon several bills of exception as a basis for' setting aside the verdict and. sentences.
 

 Bill of exception No. 1 is predicated on an objection to a part of the opening statement of the assistant district attorney to the jury, in which he was permitted by the court to read to the jury the statutes of this State covering the crime of forgery and uttering and tfye abrogation of the distinction between principals and accessories before the fact, and also to read the artides of the Revised Civil Code defining a nuncupative will by private act.
 

 The law requires the district attorney in his opening statement to “explain the nature of the charge and the evidence by which he expects to establish the same.”' Article 333, Code of Criminal Procedure. There could be no more accurate explanation of the nature of the charge against the accused than by reading the law which, defined the offense charged and the legal requirements of a nuncupative will by private act. See, also, State v. Killgore, 186 La. 233, 177 So. 2.
 

 Bills of exception Nos. 2, 3 and 4 were reserved during the taking of the testimony of Ed Sorrell, a State witness, against whom the district attorney at the beginning of the trial nolle pressed the charges of “forgery and uttering.” When the district attorney asked the witness “can you state what the terms of the will (the five witness-will) were?”, defense counsel objected,, and stated that the will itself was the best evidence., The trial judge overruled the-objection because the witness had testified that the will be read was in the hands of the defendant (Roland). The defendants contend that this constituted a comment upon the facts by the judge in the presence-of the jury and reserved bjll of exception. No. 2.
 

 The judge’s , per curiam correctly disposes of this contention, as follows:
 

 “The defendants were charged with the-forgery of a seven witness will of Jennie Bonner, who died January 9, 1938. It was-the contention of the State that the will was-
 
 *565
 
 •written after the death of Jennie Bonner; that a five witness will purporting to be the will of Jennie Bonner had been presented to an attorney after the death of Jennie Bonner by one of the defendants, which attorney expressed to this defendant •a doubt as to its validity because some of the witnesses resided outside of Caddo Parish. Thereafter the ‘Seven Witness’ will, the basis of this prosecution, was produced and filed for probate.”
 

 *
 
 ' * * * =H
 

 “No reversible error was committed by the Court for the reason that it was not a comment on the facts, but was the basis of the Court’s overruling the objection made as to secondary evidence. The ruling as •made did not convey to the jury any impression of the trial Court’s opinion as to the guilt of either defendant. State v. Dreher, 166 La. 924, page
 
 967
 
 [118 So. 85, page 101] (bill 36.)
 

 " 'It is not improper for the Court to make remarks in the presence of the jury, ■giving its reasons for admitting or excluding evidence, or to state the purpose for which the evidence is offered or admitted, etc.’ 16 C.J. 832 — Criminal Law Sec. 2101.”
 

 In connection with this bill, the argument by defense counsel was that the trial judge committed a fatal error in permitting the witness to be asked what was contained in the five witness will, which he had signed as a witness and had seen in Roland’s possession. The objection was that the will itself was the best evidence. The court ruled that the foundation had been laid by the State to introduce secondary evidence by showing that the original will was in the defendant’s possession. The record shows that the witness did not answer this question. Therefore, nothing is before us for review on this score. Furthermore, no harm whatsoever was done the defendants thereby, even if it be conceded arguendo that the ruling was erroneous.
 

 Bill of exception No. 3 was reserved to the court’s ruling in permitting the witness (Ed Sorrell) to testify concerning the conspiracy to forge and the forging of a five witness will, which was later replaced by a seven witness will. The defendants argue that no testimony was admissible as to any purported forgery other than the one upon which the ’State based its charge. The testimony was pertinent and admissible as a circumstance tending to show that the purported seven witness will upon which the charge is founded was written after the death of Jennie Bonner, and it was therefore a forgery. Evidence is relevant and admissible tending to prove similar acts independent of the one charged as a crime in the indictment or information, in order to show intent, because, although intent is a question of fact, it need not be proved as such but may be inferred from the circumstances of the transaction. Article 445, Code of Criminal Procedure.
 

 In a case where knowledge or intent forms an essential ingredient of the alleged crime, testimony may be offered to show the acts, the conduct, or the declarations of the accused, in order to establish such knowledge or intent. ’ Furthermore, where the offense charged is one of system,
 
 *567
 
 evidence is relevant and “admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent.” Article 446, Code of Criminal Procedure; State v. Jackson, 163 La. 34, 111 So. 486.
 

 Bill of exception No. 4 was reserved to the trial court’s ruling in permitting the State, over defendants’ objection, to offer evidence of the forgery of the wills by the defendants before filing in evidence the will which the defendants were charged with forging.
 

 This bill is without merit for the reasons that the court could not control the State in the order of its proof of relevant facts and no injury was done to the defendants because the will the defendants were charged with forging was offered and filed in evidence in the case.
 

 Bills of exception Nos. 5 and 6 were taken during the time that the State’s witness, W. B. Williams, was testifying.
 

 The per curiam of the trial judge correctly disposes of Bill No. 5 and we quote it with approval:
 

 “The defendants were charged with having forged the last will and testament of one Jennie Bonner, who died January 9, 1938. One of the elements in the case was the writing of the will after the date of the death of Jennie Bonner. The witness W. B. Williams who is a public stenographer and Notary Public testified in substance that Jim Childers came to him and requested him to draw a notarial will for a negro woman named Jennie Bonner, who was dead; that subsequently thereto Williams delivered to Jim Childers a copy of a nuncupative will by private act; that he, Williams, had gone to Homer, Louisiana, with W. B. Massey an attorney to investigate a possible law suit affecting the last will of Wash Moorman, a negro, whose will had been probated in Claiborne Parish; that Mr. Massey read that will from the records and he, Williams, took it down in shorthand; that upon his return to Shreveport he, Williams, transcribed his shorthand notes with typewriter making several copies; that one of these copies was delivered to Jim Childers and one was kept by him. In making the transcription Williams made several typographical errors or changes from the original Moorman will and all of these errors or changes were found in the alleged forged will of Jennie Bonner, which was dated July 14, 1937.
 

 “Defendants objected to the introduction in evidence of the copy of the Wash Moor-man will which was identified by W. B. Williams as one of the copies of that will as transcribed by him from his stenographic notes of the Wash Moorman will, on the ground that same was not certified to by any official, that it was irrelevant and immaterial.
 

 “The evidence was admissible as it was not offered to prove the Wash Moorman will, but identified by the witness as having been made by himself and was a like copy of the copy given to Jim Childers some time in February, 1938. The evidence was relevant to prove that the Jennie Bonner will was .copied from that document (as shown by the identical typographital er
 
 *569
 
 rors); that Jennie Bonner will was not made on its date, July 14, 1937; that it was in fact written after the date of Jennie Bonner’s death.”
 

 While this same witness was on the stand testifying about copying the Wash Moor-man will from the records of Claiborne Parish, the district attorney asked him the following question: “Will you state what you did when you got to the Courthouse, Homer, Claiborne Parish?” The objection was that the matter was immaterial and irrelevant.
 

 Our learned brother below correctly overruled this objection and, therefore, bill of exception No. 6 is without merit, because the answer sought from the witness was to establish the origin of the copy of the will which the witness W. B. Williams furnished J. E. (Jim) Childers, one of the accused, from which the State contended that the defendants confected the purported will of Jennie Bonner which they are charged with having forged and uttered.
 

 Bill of exception No. 7 was taken as a result of the court overruling the defendant’s objection and permitting the district attorney to ask State witness, Sidney Hetherwiclc, this question: “Did Mr. Thos. W. Robertson ever mention to you that he was interested in drawing a form of will for Jennie Bonner for E. G. Roland?” The defense objected on the grounds of hearsay.
 

 The trial judge, in his per curiam, states the relevant facts, as follows:
 

 “The State offered in evidence the testimony given by E. G. Roland, one of the defendants, at the trial wherein the alleged forged will of Jennie Bonner was sought to be probated, wherein the defendant Roland, had testified in substance that he had Thos. W. Robertson, an attorney, who died before the attempted probate of the purported Jennie Bonner’s will, prepare a form of nuncupative will; that Thos. W. Robertson made out the form in long hand, after looking into a book.
 

 “The witness Hetherwick was a clerk in the office of Mr. Robertson and testified that Mr. Robertson had no book of ‘Form’; that no copy of the will was found in the office; and that Mr. Robertson never mentioned in his presence anything about having drawn or that he was interested in drawing the alleged will of Jennie Bonner.
 

 “The evidence in the case as given by the defendant Roland, before the Civil Court, detailed the fact that Mr. Robertson asked a fee of $150.00 for drawing a will for Jennie Bonner, which she refused to pay; and that Mr. Robertson finally prepared the form for Mr. Roland, without charge.”
 

 The answer elicited by the question was not hearsay. The witness was not requested to repeat what Mr. Robertson had said but was asked to state as a fact whether anything had been said. The answer to the question was “No”. While this testimony was negative in character it was relevant and admissible as a circumstance tending to-refute Mr. Roland’s statement that Mr. Robertson had drawn the form of a will and also tending to show the falsity of the defendant Roland’s statement as to how the will was confected.
 

 
 *571
 
 The defendants waived bills of exception Nos. 8 and 9.
 

 Bill of exception No; 10 was reserved to the ruling of the trial judge in holding that the statements of the defendant J. E. (Jim) Childers to F. A. Blanchard, attorney, were not privileged communications. The record of the case and the per curiam of the trial judge show that Jim Childers wanted Blanchard to prepare a purported will for the deceased Jennie Bonner, after her death, proposing that they could share in the anticipated ill-gotten gains, and that Blanchard immediately rejected the offer of employment and escorted Childers out ■of his office.
 

 In 125 A.L.R. page 508, sub-section 11, paragraph “a”, the exception to the general rule on this subject is thus stated: “The general rule as to privilege of communications between an attorney and his •client is subject to an exception, which is well established, that communications made ■by a client to his attorney before the commission of a crime, or proposed infraction of the law, for the purpose of being guided or helped in its commission, are not privileged.”
 

 This text is supported by numerous citations. See, also, Succession of Bonner, supra, 192 La. page 314, 187 So. 801.
 

 The position of the defendants on this bill is-untenable.
 

 Bill of exception No. 11 was reserved to the ruling of the district judge in permitting Thomas M. Comegys, an attorney, to testify as to what happened and what was stated when the defendants, E. G. Roland, J. E. (Jim) and Arthur Childers came to his office seeking legal advice with reference to the purported wills of Jennie Bonner.
 

 The witness testified that Roland presented to him the purported five witness will of Jennie Bonner; that he made a photostatic copy of it and two days later advised the parties that, in his opinion, the will was invalid because one of the witnesses resided outside of Caddo Parish; that later, a purported seven witness will of the deceased was presented to him by the defendants, in order to have it probated and that he refused 'employment in connection with the probate of the will; and that he delivered the photostatic copy of the five witness will to the assistant district attorney.
 

 In his per curiam, the trial judge states that Mr. Comegys’ testimony corroborated the statement of Ed Sorrell, who had identified his signature on the photostatic copy of the five witness will purportedly signed by Jennie Bonner and which copy had been filed in evidence. He ruled that: “Even if the relationship contended for had existed between Comegys and the defendants, the testimony would have been admissible because it was an attempt on the part of the defendants to procure the help of an attorney to assist in the violation of a criminal law — i. e., the uttering of a forged document.”
 

 The defendants were charged with forging and uttering and publishing as true the forged and false will, knowing the same to be false and forged, with the intent to injure and defraud. The purpose of employ
 
 *573
 
 ing Mr. Comegys as an attorney was to have the will probated and thereby perpetrate a fraud on the rightful heirs by illegally depriving them of their inheritance under the law. The State did not merely make a charge of fraud against the defendants but it introduced the testimony of a number of witnesses other than Mr. Comegys as well as the probate records in the Succession of Jennie Bonner, supra, which clearly establish a prima facie case of fraud. With this foundation laid, the State then offered the testimony of Mr. Comegys, which .was objected to on the ground that confidential matters and communications between attorney and client are privileged.
 

 In the case of Clark v. United States, 289 U.S. 1, 53 S.Ct. 465,
 
 77
 
 L.Ed. 993, the accused was adjudged guilty of criminal contempt of court in deliberately obstructing justice by giving answers knowingly misleading and false, in response to questions covering her qualifications as a juror. In discussing the question of the admissibility of the testimony claimed to have been barred as privileged, the court said: “There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told. There are early cases apparently to the effect that a mere charge of illegality, not supported by any evidence, will set the confidences free. See, e. g., Reynell v. Sprye, 10 Beav. 51, 54, 50 Eng. Reprint, 501, 11 Beav. 618, 50 Eng. Reprint, 955; Re Postlewaite, L.R. 35 Ch.Div. 722, 724; cf. Reg. v. Bullivant [1900] 2 Q.B. 163, [1901] A.C. 196 — -C.A. But this conception of the privilege is without support in later rulings. ‘It is obvious that it would be absurd to say that the privilege could be got rid of merely by making a charge of fraud.’ O’Rourke v. Darbishire [1920] A.C. 581, 604. To, drive the privilege away, there must be ‘something to give colour to the charge;’' there must be ‘prima facie evidence that it has some foundation in fact.’ O’Rourke v. Darbishire, loc.cit., supra, also pp. 614, 622, 631, 633. When that evidence is supplied,, the seal of secrecy is broken., See also: Reg. v. Cox [1884] L.R. 14 Q.B. Div. 153, 157, 161, 175; cf. Bujac v. Wilson, 27 N.M. 112, 196 P. 513; re Niday, 15 Idaho, 559,98 P. 845.”
 

 In 125 A.L.R. page 512, we find: “Although, as will be subsequently shown, a contrary view was formerly taken in some jurisdictions, the great majority of the cases hold that the privilege protecting communications between attorney and client is-lost if the relation is abused, as where the client seeks advice that will serve him in. the commission of a fraud.”
 

 See, also, 5 A.L.R. 977 and 9 A.L.R. 1081.
 

 The State having previously shown by other competent evidence that the defendants were attempting to establish a false claim or were engaged in the commission of a fraud, the trial judge properly ruled that the relationship between attorney and clients had been abused when defendants sought to enlist the assistance of the attorney in attempting to establish
 
 *575
 
 the false claim and to perpetrate the fraud and that the privilege was thereby lost.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the verdict of the jury and the sentences of the court are affirmed.
 

 O’NIELL, C. J., concurs in result.
 

 LAND, J., absent.