277 So.2d 720 (1973)
EAGLE INDUSTRIAL ASSOCIATES, INC., Plaintiff,
v.
UNIVERSAL OIL CORPORATION, Defendant.
No. 12111.
Court of Appeal of Louisiana, Second Circuit.
April 23, 1973.
Rehearing Denied May 30, 1973.
*721 Donald L. Miller, Shreveport, for Jerry L. Finley, applicant.
Jerry L. Finley, Monroe, for Eagle Industrial Associates, Inc.
Charles E. Tooke, Jr., J. W. Jones, Shreveport, for Universal Oil Corp., Ruby C. Tatman and others.
Cook, Clark, Egan, Yancey & King by Edwin Blewer, Jr., Shreveport, for James M. Goslin, Sheriff.
Before AYRES, BOLIN, HEARD, PRICE and HALL, JJ.
BOLIN, Judge.
The lower court found Jerry L. Finley, attorney, in contempt of court for failure to testify relative to information furnished him by clients. We granted writs and the sole issue before us is the correctness of this ruling of the district court.
Eagle Industrial Associates, Inc., obtained a judgment by default against Universal Oil Corporation in the District Court of Caldwell Parish on November 3, 1972, for $120,000 plus attorney's fees, interest and costs. In order to satisfy this judgment plaintiff caused a writ of fieri facias to be issued in Caddo Parish and in connection therewith the sheriff seized several oil and gas leases owned by defendant oil corporation and attached two bank accounts by garnishment proceedings.
Ruby C. Tatman, alleging she had an interest in the oil and gas leases, instituted summary proceedings requesting that Eagle Industrial Associates be ordered to show cause why the mineral leases and bank accounts should not be released from seizure. After numerous pleadings were filed and while the rule was pending, Universal Oil Corporation and others filed an intervention and reconventional demand, alleging that the judgment was procured by fraud perpetrated by H. Wheat Bailey, Betty R. Johnson and Jerry L. Finley, and asking that the seizure be released; that the writ of seizure and sale be recalled; and for damages. After numerous exceptions to the petition of intervention and reconventional demand were filed and overruled, the sheriff was temporarily restrained from selling the mineral leases and the matter went to trial on the question of whether a preliminary injunction should issue.
During that trial Finley objected to answering several questions propounded to him about conversations he had with H. Wheat Bailey and Betty R. Johnson, secretary of plaintiff corporation, on the basis that such conversations were privileged communications between an attorney and his clients. The trial judge at first sustained these exceptions until he was apparently convinced from other evidence that a prima facie case of fraud between the attorney and his clients had been shown, after which he ordered Finley to answer a specific question. The attorney refusing to answer the question, the court found him in contempt and sentenced him to serve twenty-four hours in jail but stayed the execution of this sentence pending the filing of his application for writs and the disposition thereof.
The hearing continued but the attorney refused to testify as to other conversations with a client and the court made a similar ruling, stating that if and when this ruling was upheld Finley would be given an opportunity to purge himself by answering the questions. Finley applied to this court for writ of certiorari, claiming the attorney-client relationship protected him from answering the questions, and the trial judge filed a response to the application. We granted the writ and the entire record was ordered sent up in order that we might ascertain the correctness of the lower court's ruling.
From our study of the record we find the trial judge correctly assessed the facts in finding a prima facie case of fraud had been established which vitiated any privilege that might have been claimed by Finley on behalf of his clients.
*722 The response filed by the trial judge contains a detailed statement of facts and reasons for the ruling below. For this reason we take the liberty of quoting extensively from his response:
"On or about August 2, 1972, Universal Oil Corporation was the operator of about sixteen oil and gas wells located in Caddo Parish, Louisiana. Its business office was located in Caddo Parish, Louisiana. It was represented by Mr. Blaylock, an attorney, whose office was in Monroe. Mr. Blaylock also represented, at times, Eagle Industrial Associates, Inc., and an individual named H. Wheat Bailey. Mr. Jerry L. Finley, attorney, occupied an office adjoining Mr. Blaylock's law office in Monroe and rented from Mr. Blaylock. As part of his rent payment, he received the part-time services of Mr. Blaylock's receptionist to act as his receptionist and to perform secretarial services for him.
"On or about August 2, 1972, Mr. Finley and Mr. Blaylock rode together in an automobile to the office of Universal Oil Corporation in Shreveport, Louisiana, to attend a Board of Directors meeting. Mr. Finley testified that he did so as representing H. Wheat Bailey who was a director and an officer of the corporation.
"While there, Mr. Bailey was the only director that appeared. Mr. Bailey purported to conduct the Board of Directors meeting; to move and vote to expel the existing president; to move and vote to elect Jerry L. Finley, President; and to take other actions. Thereafter, Jerry L. Finley signed documents to authorize his signature at a bank as President of the corporation.
"Mr. Finley testified that about August 4, 1972, Mr. Finley and Mr. Blaylock again rode together from Monroe to the office of Universal Oil Corporation in Shreveport, Louisiana. There, with Mr. H. Wheat Bailey and other directors present, it was brought to the attention of Mr. Finley that a quorum was not present at the August 2nd meeting as was required by the by-laws of the corporation. Mr. Finley also frankly testified that he then made oral demand on the other directors for his client, Mr. H. Wheat Bailey, for the sum of $65,000.00 in cash and $10,000.00 as attorney fees for himself in order to terminate the interest of Mr. Bailey, or he would bring the records of the corporation to the attention of the office of the District Attorney and U.S. Internal Revenue Service.
"Mr. Finley further testified that the above demand was not met, but that all parties did agree to an audit of the books and to pay to the corporation what sums that the auditor found due to it from the directors.
"Mr. Finley next testified that he was contacted sometime before August 30, 1972, by Miss Johnson, as Secretary of the Eagle Industrial Associated, Inc., and hired to file suit against Universal Oil Corporation on a promissory note. This note was payable to Eagle Industrial Associates, Inc., which was executed as maker by Universal Oil Corporation, signed on behalf of Universal Oil Corporation by H. Wheat Bailey, dated April 15, 1971, for the principal sum of $120,000.00. He further testified that his client, through Miss Johnson, instructed him to go to Caldwell Parish to file the suit. Before he prepared the suit, however, he talked to Mr. Bailey in Monroe and asked him to go to Caldwell Parish and accept service since Mr. Bailey was registered agent for the service of process for the defendant, Universal Oil Corporation. He further testified that Mr. Bailey did not specifically agree not to raise the legal issue of improper venue, but that he did assume that Mr. Bailey did so agree because he consented to go to Caldwell Parish for service.
"A certified copy of the proceedings in the suit in Caldwell Parish, Louisiana, No. 10,224, 28th Judicial District Court, entitled Eagle Industrial Associates, Inc. v. Universal Oil Corporation, is in evidence. It establishes that the suit was filed on August *723 31, 1972, and on the last page it has a typed acceptance of service of the petition and waiver of citation that was prepared by Mr. Finley to be executed by Mr. Bailey as agent for service of the Universal Oil Corporation. This acceptance and waiver was unexecuted; however, Mr. H. Wheat Bailey was personally served by the Sheriff in Caldwell Parish in the Courthouse on September 5, 1972. A default judgment against the defendant was rendered, read and signed on November 3, 1972, for $120,000.00, plus interest, costs and attorney's fees.
"Thereafter, on January 10, 1973, the judgment was made executory in Caddo Parish and a Writ of Fieri Facias was issued which resulted in the seizure of the oil leases and wells by Mr. J. M. Goslin, Sheriff of Caddo Parish, and garnishment proceedings against two banks in Caddo Parish.
"Proceedings were next filed in Caldwell Parish by Universal Oil Corporation to set the judgment aside as having been obtained by fraud which case is presently pending.
"Next Ruby C. Tatman, et al, intervened in the suit in Caddo Parish alleging ownership in the oil and gas leases and also sought a preliminary injunction to stop the Sheriff's sale, and a permanent injunction. Universal Oil Corporation likewise filed suit to void the seizure of the oil and gas wells on the grounds that the judgment in Caldwell Parish had been obtained by fraud and asked for a preliminary and permanent injunction. The factual allegations are that H. Wheat Bailey, Mr. Finley, Mr. Blaylock, Eagle Industrial Associates, Inc., and others, fraudulently conspired to obtain a judgment by default in favor of Eagle Industrial Associates, Inc., and to let the legal delays for suspensive appeal expire all without the knowledge of Universal Oil Corporation.
"Subsequently, a petition was filed to enjoin the Sheriff from paying out the money it received on the garnishments. A temporary restraining order was issued on this petition and the rule to show cause comes up for trial on Tuesday, March 20, 1973.
"This Court took the position under the theory of the recent case entitled Licoho Enterprises v. Succession of Champagne, 270 So.2d 139, La.App. 3rd Cir. that if the allegations of fraud are borne out, there would be no equitable remedy except to grant the preliminary injunction to stop the Sheriff's sale and to stay the remainder of the matters at issue pending the final decision of the proceedings in Caldwell Parish, seeking nullity of the judgment.
"On the trial of the aforesaid rule for preliminary injunction the Court at first sustained objections to questions as to the conversations between Mr. Jerry L. Finley and Mr. H. Wheat Bailey, as well as between Mr. Finley and Eagle Industrial Associates, Inc., that pertained to the subject of the promissory note. Later, the facts were produced to establish that Jerry L. Finley first represented Mr. H. Wheat Bailey, purported to act as president of the Universal Oil Corporation, twenty-five days later then acted as attorney to sue the corporation on behalf of Eagle Industrial Associates, Inc., had gotten Mr. Bailey's agreement to accept service in another parish and not to raise the question of improper venue, and had actually obtained the judgment by default after service on Mr. Bailey in Caldwell Parish. After these facts were established I overruled the objections and ruled that neither Mr. H. Wheat Bailey nor Eagle Industrial Associates, Inc., had any privilege as to conversations about the promissory note or to the subject of this law suit, since the evidence introduced established a prima facie showing that there was a conspiracy to fraudulently obtain the judgment by default. In such an instance, no privilege exists under La.C.C. Article 2283.
"On the next trial date, Mr. Finley refused to answer further questions about his conversations with Mr. Bailey, prior to *724 the date of his being employed by Miss Johnson, as to how the message was delivered to him to come to the Directors meeting on August 2nd, and whether Mr. Bailey ever said he got a letter from the President, Mr. Maroski, [Universal Oil Corporation] that the August 2nd meeting had been postponed to August 4th. This question was relevant, because if answered adversely to Mr. Bailey, could be considered as competent evidence to further establish a conspiracy which later continued to the alleged rendition of the default judgment in agreement with Eagle Industrial Associates, Inc., or their attorney.
"Upon his refusal I told him I considered his refusal to answer as contemptuous, since because of the evidence of the fraud shown, no privilege existed in favor of Mr. Bailey or Eagle Industrial Associates, Inc., and directed that he answer the question. Upon his refusal I found him in contempt for the reasons previously given and after giving him further opportunity to speak, I sentenced him to twenty-four hours in jail, but stayed the sentence pending the filing of his application for writs.
"The second occasion was similar and I followed this same procedure but stayed the imposition of any penalty pending his application for writs and I likewise stayed any further questions of that nature."
In State v. Childers, et al, 196 La. 554, 199 So. 640 (1940) the court was faced with determining whether the attorney-client privilege could be invoked where the evidence adduced established there was an attempt on the part of the defendants to procure the help of an attorney to assist in the violation of a criminal law, i. e., the uttering of a forged document. It was there held that the privilege did not exist or, even had it existed, it was lost because the evidence established a prima facie case of fraud. The court reviewed the history of the privilege and, at page 646, summed it up as follows:
"In the case of Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993, the accused was adjudged guilty of criminal contempt of court in deliberately obstructing justice by giving answers knowingly misleading and false, in response to questions covering her qualifications as a juror. In discussing the question of the admissibility of the testimony claimed to have been barred as privileged, the court said:
"`There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told. There are early cases apparently to the effect that a mere charge of illegality, not supported by any evidence, will set the confidences free. [Cited cases omitted by this Court] But this conception of the privilege is without support in later rulings. "It is obvious that it would be absured to say that the privilege could be got rid of merely by making a charge of fraud". O'Rourke v. Darbinshire [1920] A.C. 581, 604. To drive the privilege away, there must be "something to give colour to the charge;" there must be "prima facie evidence that it has some foundation in fact." O'Rourke v. Darbishire, loc. cit., supra, also pp. 614, 622, 631, 633. When that evidence is supplied, the seal of secrecy is broken. [Cases omitted by this Court]'
"In 125 A.L.R. page 512, we find:
`Although, as will be subsequently shown, a contrary view was formerly taken in some jurisdictions, the great majority of the cases hold that the privilege protecting communications between attorney and client is lost if the relation is abused, as where the client seeks advice that will serve him in the commission of a fraud.'
"See, also, 5 A.L.R. 977 and 9 A.L.R. 1081.

*725 "The State having previously shown by other competent evidence that the defendants were attempting to establish a false claim or were engaged in the commission of a fraud, the trial judge properly ruled that the relationship between attorney and clients had been abused when defendants sought to enlist the assistance of the attorney in attempting to establish the false claim and to perpetrate the fraud and that the privilege was thereby lost."
In a case note in 29 Tulane Law Review 785, wherein a New Jersey case was reviewed, the writer cites State v. Childers, supra, in addition to numerous cases from other states, and made the following statement (at page 786) which we find noteworthy:
"The justification for the refusal to extend the attorney-client privilege to communications made in furtherance of future crime or fraud is that either professional confidence or professional employment, both of which are required for application of the privilege, are here lacking. [Cited case omitted] The client's failure to disclose his wrongful object results in the lack of professional confidence and negates the privilege; the client's disclosure of his wrongful purpose causes the privilege to vanish because an attorney cannot legitimately be employed professionally to further an illegal purpose. [Cited cases omitted]. . ."
As we have stated above, the record in this case discloses much more than a mere accusation or charge of fraud; it proves facts more consonant with a guilty purpose than with an innocent one and thereby destroys the attorney-client privilege if, indeed, one ever existed within the framework of the particular circumstances of this case.
For the reasons assigned the writ of certiorari is recalled and the matter is remanded to the First Judical District Court in and for the Parish of Caddo, State of Louisiana, for further proceedings consistent herewith and in accordance with law.