351 So.2d 462 (1977)
STATE of Louisiana
v.
Nolan Anthony SCHOUEST.
No. 59318.
Supreme Court of Louisiana.
October 10, 1977.
Rehearing Denied November 11, 1977.
*463 C. Alan Lasseigne, Thibodaux, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Francis Dugas, Dist. Atty., Walter K. Naquin, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
This is an appeal by Nolan Anthony Schouest from a conviction of second degree murder. La.Rev.Stat. 14:30.1. He was sentenced to life imprisonment without eligibility for parole, probation or suspension of *464 sentence for twenty years. Seven assignments of error are briefed and relied upon for reversal of the conviction and sentence.
The victim of this crime was Karen Ledet Foret, a young woman in her twenties. She died as a result of fifteen stab wounds sustained on the evening of November 1, 1974. When her semi-nude body was discovered during the early morning hours of November 2, 1974, contusions on her neck were consistent with an attempt by her assailant to choke her. An aerosol spray can had been forcibly inserted in her vagina.
On the evening of her death, but before the crime was discovered and reported, a State Police Officer, Donald Baudoin, returning home from his regular shift, noticed defendant's Plymouth automobile parked on the shoulder of Louisiana Highway No. 1, approximately 640 feet from the trailer where the victim's body was later found. The door of the Plymouth was partly open, and the dome light was on. Believing the occupant was either in need of help or intoxicated, Officer Baudoin decided to investigate.
As he pulled behind the parked car, the officer noticed, with the aid of his spotlight, the car's occupant bending over as though he were concealing something beneath the seat on the passenger side. Officer Baudoin approached the driver's side of the parked vehicle and inquired of the occupant, the defendant Schouest, whether he needed assistance. The trooper was told that the automobile's alternator was giving trouble but no help was needed. Schouest was asked to produce his driver's license, and they walked between the two vehicles while Baudoin inspected the license.
When they returned to the driver's side of the Schouest Plymouth, Officer Baudoin from his position outside the vehicle saw, with the aid of his flashlight beam, a bundle of what appeared to be rags or clothes on the floor of the passenger side of the Schouest vehicle. In his conversation with Schouest, Baudoin inferred that Schouest attempted to conceal these objects as the police car approached the Schouest vehicle. When Schouest protested that he had made no effort to conceal anything, Baudoin asked if he could take a look. Schouest readily consented, and entered the driver's side of the Plymouth to unlock the door on the passenger side to permit the officer to examine what turned out to be a bloodstained T-shirt and a pair of pants, together with a pair of a woman's bikini panties. A small jewelry box was also seen on the car seat.
To explain the bloody garments Schouest related that he had been involved in a fight earlier that evening in which he sustained a nosebleed which bloodied his shirt and pants. Thereafter he changed clothes at the home of Jimmy Boudreaux, a friend who lived at Grand Bois. The bikini panties, Schouest said, was a souvenir which belonged to a sister-in-law. Schouest said the jewelry box contained a pair of gold cuff links returned by a girl friend.
During the course of his discussion of the fight in which he claimed to have suffered a nosebleed, Schouest said the other fighter had been hospitalized. A radio check by Officer Baudoin failed to support Schouest's story. His suspicions aroused, Baudoin called upon a sheriff's deputy to help him evaluate the situation. When the deputy arrived, his conversation with Schouest disclosed that following the fight Schouest changed clothes at James Billiot's house in T-Bois. Despite this inconsistency with the former reference to James Boudreaux's house in Grand Bois, the officers then found no cause to arrest Schouest and advised him he was free to go. Nothing was seized. Defendant departed with the clothing and jewelry box.
However, after the victim's body was discovered the next morning, Officer Baudoin inspected the scene of the killing. He also returned to the spot where defendant's Plymouth had been parked the night before and found a class pendant belonging to the victim. A search warrant was then obtained for the search of Schouest's house and car. There seizure of evidence was made which was later introduced at the trial. Schouest was then arrested. That evening *465 he gave a second statement to the authorities (the first, which cast blame upon an unidentified man called Tommy, having been repudiated as "not true.") The second statement set forth that on the night of November 1, 1974 defendant went to the trailer house where the victim lived. He had intercourse with her and thereafter became involved in an argument. As a result the victim attacked him with a knife. While Schouest was fending off the attack, she somehow stabbed herself twice. Then, Schouest said, he "lost [his] head . . .," and started stabbing her. He then changed his clothes, using clothes in the victim's closet, took the jewelry box he had given her on another occasion and left, encountering Officer Baudoin shortly thereafter.
The statement indicated Schouest had been intimate with the victim prior to and during her marriage and that, having met her husband in a bar earlier in the evening, Schouest knew that he would be out drinking the night of November 1, 1974.

Assignment 1
Prior to trial a motion was filed on behalf of defendant to suppress "all objects or other property, or documents, books, papers or writings" in the possession of the State, "the description of which is unknown to mover" seized by police officers in a search of the premises located at R.F.D., Box 752, Lockport, Louisiana, on or about November 2, 1974 or seized by police in a search of defendant's automobile, a 1966 Plymouth, on or about November 2, 1974 at about 2:30 p. m.
The motion alleged further that the affidavits upon which the search warrants were issued contained information in the possession of the affiants which was the "fruit of the poison tree."
A previous search of defendant's automobile had been made on November 1, 1974 at approximately 11:45 p. m. which, it is alleged, was not incident to an arrest, was made without a search warrant, without probable cause and without warning defendant of his constitutional rights.
Also, it is alleged, an illegal entry had been made by police officers of defendant's bedroom at R.F.D. Box 752, Lockport, Louisiana, at approximately 6:30 a. m. on November 2, 1974 for the purpose of arresting defendant. This entry, the motion sets forth, was accomplished without an arrest warrant, and without probable cause independent of the facts obtained by the November 1, 1974 search of defendant's automobile.
Thus the validity of the search warrants and the searches and seizures made pursuant thereto was based upon information obtained by Officer Baudoin on the night of November 1, 1974 when he stopped to talk to Schouest at his parked car on the side of the highway. The facts and circumstances surrounding this incident were developed at the hearing on the motion to suppress and are set forth in detail in the foregoing narrative.
The State contends that the confrontation on the night of November 1, 1974 between Officer Baudoin, the deputy sheriff and the defendant Schouest was not tainted with any illegality so as to render the subsequent search warrants invalid.
In brief the defense argues that the initial detention of Schouest was unconstitutional. Noting the State's reliance on the rules of "stop and frisk" and "plain view", the brief quotes from Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) to the effect that ". . . whenever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person . . ." On this premise the defense argues that Schouest had the right to be free from unreasonable governmental intrusion. He was lawfully parked, there was no reason to approach him, and the officer had no reasonable belief that Schouest was committing or had committed a crime. Under these circumstances the detention was unconstitutional and the evidence developed from this procedure was tainted with that illegality.
The defense position is not well-taken. The officer's approach to the Schouest vehicle was dictated by his experience, his *466 interest in the welfare of the motoring public and by the requirements of his official duties. These furnish reasonable grounds for stopping to inquire of the occupant of a vehicle parked on the shoulder of the highway after eleven o'clock at night with its dome light on and a door ajar. The mere stopping of a vehicle and observing defendant's car was not a search by Officer Baudoin.
The "plain view" doctrine applies to automobiles and what is revealed by shining a flashlight into a car at night is considered to be in open view. Williams v. United States, 404 F.2d 493 (5th Cir. 1968). There is no evidence that defendant was coerced, threatened, mislead or mistreated in any manner. Nothing in the record indicates that defendant did not understand what he was doing or that his actions were not voluntary. To the contrary, defendant cooperated with the officers, consented to the examination of the clothing and opened the car door to admit Officer Baudoin.
A search or inspection conducted with the consent of a defendant is an exception to both the warrant and probable cause requirements of the law. And the voluntariness of the consent is a question of fact to be determined by all of the facts and circumstances of each individual case. In such a determination the trial judge's conclusions on credibility are entitled to great weight. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Strange, 334 So.2d 182 (La.1976); State v. Hubbs, 261 La. 173, 259 So.2d 53 (1972).
The scope of the officer's inquiry did not exceed permissible limits and resulted in no seizure of objects or illegal detention of Schouest. Defendant has not discharged the burden imposed by Article 703 of the Code of Criminal Procedure upon the movant in a motion to suppress to establish the unconstitutionality of the search and seizure. State v. O'Conner, 320 So.2d 188 (La.1975); State v. Wood, 262 La. 259, 263 So.2d 28 (1972).

Assignment 2
Apparently the defense sought to support a theory that Almus Foret, Jr., husband of the victim, was pimping for his wife, was present during the alleged murder and did, in fact, commit the murder himself. To support this theory in part the defense called Dr. George A. Bishop as an expert in the field of psychiatry. On redirect examination by defense counsel the following colloquy occurred:
"Q. Under the right circumstances and particularly if the husband had told the wife to do certain things and the wife rebelled, would there by anything inconsistent with this type of attack, a savage attack, being the result of the husband attempting to assert himself and his authority over that wife?
"A. I think you need to put more into that hypothesis than what you're stating.
"Q. Let me give you a specific hypothesis. If that husband were, for whatever reason, procuring men"
At this time the prosecutor objected that the question went beyond the cross-examination, and the trial judge interjected: "Well, not only that, but in order to ask a hypothetical question the facts upon which the hypothetical questions are based must be in the evidence." Whereupon, defense counsel moved for a mistrial "on the grounds that you [the trial judge] commented on the evidence that such facts have not been put into the record."
In brief the defense points to the testimony of Almus Foret, Jr., in which he categorically denied that he killed his wife or that he ever pimped for her or tried to sell her sexual services to others. The trial judge's comment, the defense reasons, amounted to a declaration by the judge to the jury that he believed Foret's denials despite the fact that the defense witness Philip Breaux had previously testified that Foret did in fact sell his wife to Breaux on more than one occasion.
*467 It is a statutory rule in this State that in the presence of the jury the judge may not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted. La.Code Crim.Pro. art. 772. However, this Court has consistently held that remarks made by the trial judge in the jury's presence giving reasons for his rulings on objections, for admitting or excluding evidence or stating the purpose for which evidence is offered or admitted, are not objectionable as comments or expressions of an opinion provided they are not unfair and prejudicial to the accused. State v. Young, 337 So.2d 1196 (La.1976); State v. Fallon, 290 So.2d 273 (La.1974); State v. Hills, 241 La. 345, 129 So.2d 12 (1961), rev'd. on rehearing on other grounds; State v. Nicolosi, 228 La. 65, 81 So.2d 771 (1955); State v. Walker, 204 La. 523, 15 So.2d 874 (1943); State v. Childers, 196 La. 554, 199 So. 640 (1940).
The ruling of the trial judge was not, as the defense contends, an expression of an opinion of what has been proved or not proved. While there was evidence that Almus Foret did procure Breaux for his wife, this did not occur on the night of the killing as defense counsel's hypothesis required. There is no evidence that Foret was procuring men for his wife the night she was killed. Moreover, there is no evidence to support the assumed fact that on the night that Mrs. Foret was killed her husband told her to do certain things against which she rebelled. Nor is it established in the evidence that as a result of his wife's rebellion she was savagely attacked by Foret.
The opinion of an expert witness on facts not within his personal knowledge may be elicited by propounding a hypothetical question which is in proper form, provided the hypothesis assumes only facts which the evidence proves or tends to prove. Unless the record supports the facts assumed the hypothetical question is impermissible. La.Rev.Stat. 15:278; 23 C.J.S. Criminal Law § 883.
This assignment is without merit.

Assignment 3
Defense counsel objected during voir dire to the prosecutor asking prospective jurors "would" they convict rather than "could" they convict under certain circumstances. The specific question to which the defense objected was: "After you sit through this trial and after you listen to all of the evidence, and if after that we convince you beyond a reasonable doubt that Nolan Schouest is guilty, would you vote guilty in this case?"
The defense objection is based upon the contention that the question seeks a commitment and a promise from the jurors. In rebuttal the State argues that the question is a correct statement of the law which presents a legitimate inquiry into the juror's qualifications. If the juror will not accept the law as given to him by the court, Articles 797 and 798 of the Code of Criminal Procedure provide that he may be challenged for cause. Furthermore, the prosecutor argues, he may ascertain on voir dire whether the prospective juror will obey his solemn duty under the law to convict when he is convinced beyond a reasonable doubt that the defendant is guilty.
In State v. Young, 337 So.2d 1196 (La.1976) this Court held that the reference by the district attorney to a "promise" of the jurors (during voir dire examination) that they would return a verdict of guilty if warranted by the facts was only a reminder by the prosecutor of the juror's sworn duty.
This assignment is without merit.

Assignment 4
During the prosecutor's closing argument defense counsel moved for a mistrial because of the following remark referring to the inculpatory statement of the defendant which the State had introduced into evidence: "Now, in addition to this evidence we have the defendant's statement that he was there and that he did it. There is an *468 eyewitness in this case. There is direct evidence. The defendant himself . . ."
It is argued on behalf of the defendant that it was the prosecutor's intent to impress the jury with the fact that defendant did not testify. Advancing such a proposition, it is contended, warrants a mistrial under the authority of Article 770 of the Code of Criminal Procedure proscribing any direct or indirect reference to the failure of the defendant to testify in his own defense.
The State contends that this portion of its argument was in answer to the defense reference to circumstantial and direct evidence during voir dire of prospective jurors. This was the State's argument that direct evidence of defendant's commission of the crime was contained in the defendant's own statementthe inculpatory narration of the happening in the trailer which was introduced without objection.
Considered in this context, together with the fact that no direct statement was made by the prosecutor alluding to the failure of the defendant to take the witness stand, the defense motion for a mistrial is without merit. In order to mandate a mistrial, this Court has said that the inference must be plain that the remark was intended to bring to the jury's attention the failure of the defendant to testify. State v. Gilmore, 323 So.2d 459 (La.1975); State v. Shilow, 252 La. 1105, 215 So.2d 828 (1968), cert. denied, 397 U.S. 927, 90 S.Ct. 932, 25 L.Ed.2d 106 (1970). Before a verdict approved by a judge is set aside on the ground of improper argument, this Court must be thoroughly convinced that the alleged improper argument contributed to the verdict. La.Code Crim.Pro. art. 921; State v. Lockett, 332 So.2d 443 (La.1976); State v. Dennis, 250 La. 125, 194 So.2d 720 (1967).
This assignment is without merit.

Assignment 8
At the close of the State's case the defense moved for a directed verdict on dual grounds: first, that the crime was committed while the law of this State permitted the trial judge to direct a verdict of not guilty to which this defendant was entitled; and, second, the State failed to prove an essential element of the crime, specifically, that the defendant had not acted in self-defense, the self-defense issue having been raised by the State when defendant's pretrial statements to the police officers were introduced into evidence by the State.
The trial of this case began with the calling of the first juror on November 15, 1976. La.Code Crim.Pro. art. 761. The authority of a trial court to direct a verdict of not guilty in a jury trial was withdrawn on September 12, 1975 by Act 527 of 1975 amending Article 778 of the Code of Criminal Procedure. On several occasions since that time this Court has held that the amendment was procedural in character. Being procedural in nature the amendment is applicable to this trial which was held after the amendment's effective date. State v. Charles, La., 350 So.2d 595; State v. George, 346 So.2d 694 (La.1977); State v. Jackson, 344 So.2d 961 (La.1977); State v. Clark, 340 So.2d 208 (La.1976), cert. denied 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977); State v. Marmillion, 339 So.2d 788 (La.1976).
From these cases it is concluded that the trial judge had no authority to grant an acquittal, or directed verdict, and, therefore, defendant's motion was not well-taken.
This assignment is without merit.

Assignment 10
Defendant offered to introduce the results of two "polygraph" tests and a "voice stress" test. This offer, after discussion in chambers and in open court out of the presence of the jury, was declined by the trial judge. The ruling is assigned as error.
The ruling was correct. In at least four decisions this Court has recognized that the results of polygraph examinations are unacceptable as evidence in criminal prosecutions. State v. Weeks, 345 So.2d 26 (La.1977); State v. Governor, 331 So.2d 443 (La.1976); State v. Corbin, 285 So.2d 234 *469 (La.1973); State v. Refuge, 264 La. 135, 270 So.2d 842 (1972). Like the "polygraph" tests, there has been no adequate showing of the reliability of the "voice stress" test.
The rule to which this Court has adhered is not altered by the defense contention that defendant was a suitable subject for these tests. Nor is admissibility promoted by the contention that defendant's own statement inculpating himself as the only eyewitness to the offense was produced by the State as direct evidence to bolster its circumstantial case. By this means the defense is understood to argue that defendant was placed in a position where corroboration of his trial version (self-defense) of the killing was of paramount importance, there being no other eyewitnesses to the killing.
This assignment has no merit.

Assignment 11
Again referring to the point in the trial referred to in our consideration of Assignment 2, defense counsel's argument here centers upon the alleged prejudice to the defendant by the judge's failure to allow the defense to pursue a line of hypothetical questions. These questions were to be propounded to Dr. Bishop, the psychiatrist and member of the court-appointed sanity commission.
According to the defense brief, the emotional and psychological make-up of the assailant as reflected by the physical evidence at the trial, as well as a comparison of same with the emotional and psychological make-up of the defendant, was a central point in the doctor's testimony. This being so, defense counsel contends he should have been allowed to pursue that line of questioning.
In addition to the reasons given in our consideration of Assignment 2, it is noted that defense counsel was permitted wide latitude in examining Dr. Bishop and, in our judgment, no undue prejudice resulted to the defendant. Except for the opinion he sought to obtain from Dr. Bishop all of the facts were before the jury and the conclusion to be drawn from them was their prerogative, not the province of experts.
For the reasons assigned, the conviction and sentence are affirmed.
SANDERS, C. J., concurs.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., dissents. The trial judge commented upon the evidence in the presence of the jury in violation of La.C.Cr.P. Art. 772.
CALOGERO, Justice, concurring.
When a policeman shines a flashlight into a car at night, his discovery of contraband is never considered the discovery of something in "plain view" unless there is a particular justification for his action in flashing the light inside the car. See State v. Bourg, 332 So.2d 235 (La.1976) (policeman helping defendant, stopped for traffic violation, to find his driver's license). One of the essential elements justifying a plain view seizure is that the discovery of the object be inadvertent. State v. Williams, 347 So.2d 231 (La.1977); State v. Fearn, 345 So.2d 468 (La.1977). Here, where the policeman shined his light into the car for no asserted or apparent reason other than to look into Schouest's automobile, the discovery of the bundle was not at all inadvertent and therefore not in plain view.
However, because I believe that the majority correctly finds that defendant consented to the search of his automobile, I concur in the majority determination.